H. A. PRENTICE COMPANY *vs.* MOSES S. PAGE & others.
JAMES M. DAVIS & another *vs.* MOSES S. PAGE & another.

Suffolk.    March 22, 1895. — September 9, 1895.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Conversion — Fraud — Pledge — Instructions — Statute.*

If A. obtains goods from B. by means of false and fraudulent representations that he has reliable customers for them, and by means of forged conditional contracts of sale, and then pawns the goods to C., who takes them in good faith, B. may maintain an action against C. for the conversion of the goods; and an in-

struction to the jury that, in order to protect C. under Pub. Sts. c. 71, the goods must have been intrusted to A. " to sell and dispose of in the ordinary course of business as a common law sale," is harmless.

Where an agent or factor procures goods to be intrusted to him for delivery to third persons under forged conditional contracts of sale, the goods are not intrusted to him for sale, within the meaning of Pub. Sts. c. 71.

TWO ACTIONS OF TORT, for the conversion of certain personal property. The cases were tried together in the Superior Court, before *Dewey*, J., who reported them for the determination of this court, in substance as follows.

The plaintiffs put in evidence the report of an auditor, and rested. The report, which was the same in each case, found the following facts.

The plaintiff in the first case was a corporation having its principal place of business in Boston, and dealing in diamonds, watches, and miscellaneous jewelry. In the summer of 1887, one Walter F. Gregg came to the place of business of the plaintiff, and, by means of false and fraudulent representations, succeeded at different times in obtaining a large amount of goods from it. The general method of dealing between the plaintiff and Gregg was to intrust Gregg with diamonds, watches, and other property of the plaintiff, to sell and dispose of on leases or conditional contracts of sale, and to return all such contracts to the plaintiff, which would thereupon pay Gregg a commission on all such leases or contracts so turned in.

Gregg, in order to obtain goods from the plaintiff, falsely and fraudulently represented that he had customers who wished to purchase the property he was intrusted with, and, in order to account for the goods, Gregg paid the plaintiff such monthly instalments on the contracts out of his own pocket as he was compelled to do in order to prevent his fraud from being discovered. This course was continued for some three months, until the fraud was discovered by the plaintiff, which thereupon caused the arrest of Gregg on charges of forgery and larceny, to which charges he pleaded guilty and served his sentence.

The title to all goods thus taken out by Gregg remained in the plaintiff until the goods were fully paid for, and Gregg, when so intrusted with goods, would pawn them to the best advantage he could for his personal gain, and account for the goods by means of forged and fictitious contracts as above stated.

Gregg, at the time of his dealings with the plaintiff, had a small shop on the fourth floor of a building on Bromfield Street in Boston, and a sign upon the door reading " Oil and Crayon Portraits Co.," and after commencing dealings with the plaintiff he procured a show-case about eight feet long in which he kept some gold plated ware, diamonds, and jewelry, but the defendants never visited the shop or knew of its existence.

Gregg received from the plaintiff the goods mentioned in the declaration under the circumstances above recited, which goods he pawned to the defendants, and accounted for the same to the plaintiff by means of forged and fictitious contracts of sale purporting to be signed by third parties, and upon discovery of Gregg's doings the plaintiff made demand upon the defendants for the goods, which they refused to deliver up, and the plaintiff thereupon brought this action.

The defendants offered evidence tending to show the following additional facts.  In 1887, Gregg purchased of the plaintiff corporation a diamond ring on a conditional contract of sale, which recited the receipt by him of the ring, and his agreement to pay a certain sum on delivery and the balance of the price in monthly instalments, and that the title to the property should remain in the plaintiff until the full sum had been paid by him to it.  He then represented to the plaintiff that he was doing business in a building on Bromfield Street in Boston, such business being the manufacture and sale on conditional contracts of oil and crayon portraits ; and that he had a large and reliable number of desirable customers to whom he could sell the property of the plaintiff in the same manner, the title of the property to remain in the plaintiff until paid for.

The plaintiff, through its representatives, visited the place of business of Gregg, and was there shown what purported to be a large number of conditional contracts of sale, signed by the customers as before represented, and, after further talk and investigation, the plaintiff entered into an agreement with Gregg substantially as follows : Gregg was to solicit patronage for the plaintiff, and endeavor to make sales for it on conditional contracts of sale, and for the sales made in such manner he was to receive from the plaintiff a sum equal to ten per cent of the face of the contract so made.

It appeared in evidence that the plaintiff, in consequence of the supposed successful business conduct of Gregg, trusted him personally with some two thousand dollars' worth of merchandise, and charged the same to him in the regular course of business, but that none of the goods alleged to have been converted by the defendants were included in any of these transactions, or had ever been charged to him or purchased by him in any way, but were all delivered to him upon his representation that he had a reliable customer for them, to whom the plaintiff supposed they had been delivered.

There was evidence tending to show that the plaintiff intended to retain the title to all goods so intrusted to Gregg until the same were fully paid for; and that Gregg, when he had obtained the goods, would pawn them and account for the same by means of forged contracts.

It also appeared in evidence that, when Gregg was intrusted with merchandise to show to a customer whom he pretended to have, Gregg signed a receipt for the same substantially as follows : " I, the undersigned, have received this day of the H. A. Prentice Company the following articles : [description of the articles]. I promise to return the above named articles on demand."

The facts relating to Gregg's transactions with the plaintiffs in the second case, who were copartners under the name of J. M. Davis and Company doing business in Boston, were the same as with the plaintiff in the first case, the evidence tending to show that the goods were received and disposed of in the same manner.

The defendants asked the judge to rule that, if the jury found that Gregg was intrusted with these goods, either with the power to sell for cash or on conditional contracts of sale, as the agent of the plaintiffs, the defendants were protected by Pub. Sts. c. 71, relating to agents, consignees, and factors, regardless of the fact that Gregg obtained the merchandise by means of forgeries and false and fraudulent representations.

The judge declined so to rule, and instructed the jury as follows : " The provision of Pub. Sts. c. 71, relating to agents, consignees, and factors, means that, in order to protect a *bona fide* pledgee, the goods or merchandise in the hands of an agent must

have been intrusted to him to sell and dispose of in the ordinary course of business, as a common law sale."

The jury returned verdicts for the plaintiffs. If the instruction given was correct, judgment was to be ordered on the verdicts; otherwise, the verdicts were to be set aside and a new trial granted.

*L. M. Child*, for the defendants.

*A. Hemenway*, for the plaintiffs.

MORTON, J. The goods which are the subject of these suits were obtained from the plaintiffs by one Gregg by means of false and fraudulent representations and forged conditional contracts of sale. After he had thus obtained the goods, Gregg pledged them to the defendants. Although there is nothing in the report of the presiding justice or in the auditor's report positively showing that the defendants took them in good faith, it is assumed in the instructions to the jury, and we take it for granted that they did. The H. A. Prentice Company also " trusted Gregg personally with some two thousand dollars' worth of merchandise, and charged the same to him in the regular course of business " ; but it is expressly stated in the report of the presiding justice that none of the goods which are the subject of these suits were ever " charged to him or purchased by him in any way, but were all delivered to said Gregg upon his representation that he had a reliable customer for them," and we assume were all accounted for by him by forged conditional contracts of sale. The facts show that there was a larcenous taking of the goods by Gregg, for which he was afterwards convicted and sentenced.

The defendants, in substance, requested the court to instruct the jury, that if the goods were intrusted to Gregg to sell for cash, or on conditional contracts of sale, the defendants were protected by Pub. Sts. c. 71, although the goods were obtained from the plaintiffs by Gregg by forgery and fraud.

The court refused to give this instruction, and instructed the jury in effect that, in order to protect a *bona fide* pledgee under c. 71, " the goods or merchandise in the hands of an agent must have been intrusted to " the agent, " to sell and dispose of in the ordinary course of business as a common law sale."

Without undertaking to say that intrusting goods or merchan-

dise to an agent or factor to sell means under all circumstances such a sale as defined by the court, we think, upon the undisputed facts, that the plaintiffs were clearly entitled to recover, and that therefore the instructions could have done no harm in the present case.

There was no evidence to show that the goods were intrusted to Gregg to sell for cash, and therefore so much of the request as related to that was inapplicable to the case before the court and jury.

The object of Pub. Sts. c. 71, is to protect parties dealing in good faith with factors or agents who have been intrusted with goods or merchandise for sale or consignment. It might be said that goods given, as these were, to one to be delivered by him to parties who he represented had purchased them, were not intrusted to him for sale, but as an agent for delivery merely. But however that may be, we do not think that the statute applies when goods or merchandise have been procured by the agent or factor to be intrusted to him for delivery under what purport to be conditional contracts of sale, in consequence of what in law constitutes a larceny of them on his part. In such a case the goods cannot be said to have been intrusted to him for sale in any manner within any fair meaning of those words. It would be a contradiction in terms to say that goods are intrusted for sale to one who steals them. *Stollenwerck* v. *Thacher*, 115 Mass. 224. *Thacher* v. *Moors*, 134 Mass. 156. *Rodliff* v. *Dallinger*, 141 Mass. 1. *Dows* v. *National Exchange Bank*, 91 U. S. 618. *Soltau* v. *Gerdau*, 119 N. Y. 380.

If the goods have been properly intrusted to an agent for sale, a party afterwards dealing in good faith with the agent will be protected, though the latter may violate his instructions, or, in disposing of or dealing with the goods, conduct himself fraudulently towards his principal. *Michigan State Bank* v. *Gardner*, 15 Gray, 362, 374. But that was not the case here.

In regard to the case of *Baines* v. *Swainson*, 4 B. & S. 270, which may seem opposed to the conclusion which we have reached, it should be observed that the English Factors' Acts (6 Geo. IV. c. 94) simply provide that the goods shall be "intrusted," and not, as ours, "intrusted for sale," and the fact that they do not provide that they shall be intrusted for sale is

adverted to in the argument of counsel and in the opinion given by Crompton, J., pp. 275, 281.   See also *Cole* v. *Northwestern Bank*, L. R. 10 C. P. 354, 373, 374, where Blackburn, J. says that Willes, J., in delivering judgment in *Fuentes* v. *Montis*, L. R. 3 C. P. 268, " speaks of *Baines* v. *Swainson* as going to the extreme of the law."        *Judgment on the verdicts.*