ALEXANDER D. CAIRNS & another *vs.* MOSES S. PAGE.

Suffolk.   November 14, 1895. — April 2, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Replevin — Pledge — Statute.*

If A., who is the salesman of B., obtains goods of him, not by false and fraudulent representations, but pursuant to a custom of B. to deliver goods to A. with authority to sell them either for cash or on conditional contracts of sale, and A. pledges them to C. as security for the payment of money lent to him by C., B. cannot replevy the goods of C.; A. must be regarded as a person intrusted with merchandise, and having authority to sell the same, within the meaning of Pub. Sts. c. 71, § 3.

REPLEVIN of a diamond stud.   Trial in the Superior Court, without a jury, before *Dunbar*, J., who found for the defendant, and ordered a return of the property; and the plaintiffs alleged exceptions, the nature of which appears in the opinion.

The case was argued at the bar in November, 1895, and afterwards was submitted on the briefs to all the judges.

*J. H. Blanchard*, for the plaintiffs.

*J. F. Wiggin*, for the defendant.

FIELD, C. J.   This was an action of replevin, to recover possession of a diamond stud, originally the property of the plaintiffs, and pledged to the defendant by one Buitekan as security for the payment of money lent to him by the defendant.   Buitekan was employed as a salesman by the plaintiffs, on a salary, and the plaintiffs were accustomed to deliver goods to Buitekan "to go out and sell, either for cash or on conditional contract of sale." Whether Buitekan, before pledging the stud to the defendant, had ever sold it to one Hammelburg and delivered it to him on a conditional contract of sale, we do not know, although the exceptions recite "that some time in October, 1893, the said Buitekan informed Cairns that he had a customer by the name of S. J. Hammelburg, who wished a stud, and the diamond stud in suit was delivered to Buitekan to take to Hammelburg for his inspection, with a view to selling the same to him." Buitekan may have had the expectation of selling it to Hammelburg,

although he may not have succeeded in effecting a sale. Buite-
kan informed the plaintiffs, some time after the delivery of the
stud to him, that Hammelburg had it; and he exhibited a forged
conditional contract of sale of the stud purporting to have been
signed by Hammelburg, and he testified that he " obtained the
stud from said Hammelburg without the knowledge or con-
sent of the plaintiffs," and pledged it to the defendant. These
representations, however, could not have induced the plaintiffs
to deliver the stud to Buitekan, because they were made after
the delivery of it to him. The case was tried by the court with-
out a jury, and there is no finding by the court that the plaintiffs
delivered the stud to Buitekan for the sole purpose of enabling
him to sell it to Hammelburg, or that Buitekan obtained posses-
sion of it by means of false and fraudulent representations, and
there was no request for any rulings or findings on this part of
the case.

The exceptions recite as follows: " The defendant requested
the court to rule, 'If Solomon Buitekan was intrusted by the
plaintiff with the diamond stud pledged and delivered to the
defendant by said Buitekan, with authority to sell it, and the de-
fendant advanced money to the said Buitekan at the time of
such pledge and delivery, upon the faith of such pledge and de-
livery, and had at the time of such advance probable cause to
believe that said Buitekan was the actual owner thereof, the
plaintiff, not having tendered to the defendant the amount so
advanced by him, cannot maintain this action. The court found
as a fact, that Solomon Buitekan was intrusted by the plaintiffs
with said diamond stud, pledged and delivered to the defendant
by said Buitekan, with authority to sell it, and that the defend-
ant advanced money to said Buitekan at the time of such pledge
and delivery, upon the faith of such pledge and delivery, and at
the time of said advance the defendant had probable cause to
believe that said Buitekan was the actual owner thereof, and that
the plaintiffs never tendered to the defendant the amount so ad-
vanced by him.' The court gave the foregoing ruling, and made
a finding for the defendant and ordered a return of the property."
The plaintiffs excepted to this ruling, and this is the only excep-
tion in the case.

We cannot assume, on this bill of exceptions, that Buitekan

obtained possession of the stud from the plaintiffs by means of false and fraudulent representations on which they relied. As we understand the bill of exceptions, it was the custom of the plaintiffs to deliver to Buitekan goods, with authority to sell them either for cash or on conditional contracts of sale, although no contracts of sale of the goods so delivered had at the time of delivery been made by him. We cannot say that the court could not properly find that the plaintiffs delivered the stud to Buitekan to sell to Hammelburg, or to any other person, and the court has in effect so found, as we interpret the finding, and to this there is no exception. These facts distinguish the case from that of *H. A. Prentice Co.* v. *Page*, 164 Mass. 276.

The question is whether the case is within Pub. Sts. c. 71, § 3. As there is no exception that the evidence did not warrant the finding, the sole question of law is whether a man employed on a salary to go out and sell goods which are put into his manual possession is a person intrusted with merchandise and having authority to sell the same within the meaning of this section. We think that he is. If Buitekan was the servant of the plaintiffs, he was also their agent, going about and selling merchandise put into his hands for that purpose. He was employed to make sales of merchandise of a kind which is carried upon the person at places other than the place of business of the plaintiffs. The language of the Pub. Sts. c. 71, § 3, is very broad, and includes any person intrusted with merchandise, and having authority to sell or consign the same. We think that such an agent as Buitekan is intrusted with merchandise, within the meaning of this section, when it is delivered to him to carry away with authority to sell it to such persons as he chooses. This is perhaps implied in *H. A. Prentice Co.* v. *Page, ubi supra.* See *Thacher* v. *Moors*, 134 Mass. 156.

In *Hastings* v. *Pearson*, [1893] 1 Q. B. 62, it was held that an agent of much the same kind as Buitekan is shown to have been in this case, was not a mercantile agent within the meaning of 52 & 53 Vict. c. 45, § 2, subsect. 1, but our statute is not confined to mercantile agents. For English decisions upon English statutes prior to 52 & 53 Vict. c. 45, see Benjamin, Sales, (4th ed.) 17 *et seq.*, 818 *et seq.*

*Exceptions overruled.*