GEORGE E. HANDY & another *vs.* C. I. T. CORPORATION.

Worcester.   September 26, 1934. — June 24, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Agency,* What constitutes, Undisclosed.  *Trust,* "Trust receipt."  *Sale,*
By agent of undisclosed principal.  *Factor's Act.  Bona Fide Purchaser.*

On the facts, a dealer in automobiles, who, under a so called "trust
receipt" given by him to a finance company which took title to an
automobile from a distributor, received possession of the automobile
with the right to display it for sale and to sell it for the account of
the finance company, no member of the public having any means of
knowing that the finance company had any claim to it, became an
agent of the finance company as undisclosed principal to sell it; and
where it was sold by the dealer in the ordinary course of business to
a *bona fide* purchaser, the latter was entitled to it as against the finance
company both at common law and under G. L. (Ter. Ed.) c. 104, § 1,
even though the dealer did not make payment to the finance company
for it.
The evidence warranted a finding that one who purchased an automo-
bile from a dealer in possession of it as agent for an undisclosed prin-
cipal was a *bona fide* purchaser without knowledge of the principal or
his relation to the automobile, even though the purchaser sold auto-
mobiles for the dealer.

TORT.   Writ dated October 23, 1931.

The action was tried in the Superior Court before *Hall,*
C.J., who ordered a verdict for the defendant.  The plain-
tiffs alleged an exception.  Material evidence is stated in the
opinion.

The case was submitted on briefs.

*W. M. Quade & A. W. Plotkin,* for the plaintiffs.

*G. A. Bacon, N. P. Wells, & S. W. Weltman,* for the
defendant.

RUGG, C.J.   This is an action of tort for conversion of
an automobile.  The trial judge directed a verdict for the
defendant.  The relevant facts disclosed by the plaintiffs'
bill of exceptions are these:

The defendant, a finance company, had a general busi-
ness arrangement, followed in the instant case, with one

Stiles, a retail dealer in automobiles. An automobile would first be received by the distributor in Boston from the factory. Stiles would go to Boston to take possession of the automobile. The distributor would make out a bill of sale to the defendant; eighty-five to ninety per cent of the purchase price would be paid by the defendant and the balance by the dealer; Stiles would sign an instrument termed a "trust receipt" acknowledging receipt of the automobile from the defendant and agreeing to hold it, or, if sold, its proceeds, as the defendant's property. That so called "trust receipt" would be taken by the defendant. The automobile would then be driven off by Stiles and with the defendant's knowledge displayed for sale in his garage without any indication that the defendant had any claim upon it. The so called "trust receipt" contained Stiles's agreement to return the automobile "on demand in good order and unused but with liberty to us to exhibit and if the written consent of C. I. T. has first been obtained to sell the same for its account for cash for not less than $915.00," and it provided that "C. I. T. may at any time cancel this trust and repossess itself of said motor vehicle or the proceeds thereof." The defendant knew that it was customary for Stiles to sell such automobile to the public, that the trust receipt was not recorded in any place and that no member of the public had means of knowing that the defendant had any claim on the automobile. The defendant was aware that Stiles was selling automobiles thus obtained by him to the public and that they were displayed for sale and that no method was used by the defendant to notify anybody that the defendant had a claim on such automobiles.

The automobile here in question, so held by Stiles, was sold by him to the plaintiffs, who are father and son, without written consent of the defendant. The son, shortly before this time, had made an arrangement with Stiles to sell automobiles on a commission basis. The father joined with the son in the purchase by trading in an old automobile on the basis of $666 and signing a note for the balance of $741.28 together with a conditional sales contract of the usual form, making the total purchase price slightly more

than $1,407. The plaintiffs neglected to register the automobile but kept dealer plates of Stiles on it. It was sometimes kept in Stiles's garage, and sometimes at the plaintiffs' home. The plaintiffs took general care of the automobile though Stiles often borrowed it for use for display purposes. It cannot be inferred that they had knowledge of the defendant's claim. Stiles assigned the conditional sales agreement and note to the Greenfield Loan and Acceptance Corporation, and never paid the defendant anything on the automobile. On August 26, 1931, the defendant repossessed the automobile from Stiles and refused a demand from the plaintiffs that it be returned to them. The plaintiffs continued to make payments to the Greenfield Loan and Acceptance Corporation on their note, and on October 27, 1931, paid the balance due on it. Stiles furnished none of the money so paid by the plaintiffs. This action was begun by writ dated October 23, 1931.

In order to prevail the plaintiffs must prove that at the time of the conversion they had a complete property either general or special in the automobile, and the right to its immediate possession. *Bacon* v. *George*, 206 Mass. 566, 570. *Judkins* v. *Tuller*, 277 Mass. 247, 250. The defendant contends that under the instrument signed by Stiles it had legal title to the automobile all the time and a right to repossess it at any time, since no payments were made to the defendant, and that the plaintiffs had no title to the automobile or right to its possession.

The evidence already narrated warranted a finding that the defendant did not pay to the distributor of the automobiles, who was an intermediary for the manufacturer and Stiles, the dealer, the entire purchase price of the automobile but that Stiles paid ten or fifteen per cent of that price. We do not pause to inquire whether in these circumstances a so called trust receipt was appropriate to the transaction, or whether it was a chattel mortgage, invalid except as between the parties because not recorded. *Hartford Accident & Indemnity Co.* v. *Callahan*, 271 Mass. 556, 563. A further finding was warranted that under the course of business between the defendant and Stiles the latter made

sales of automobiles financed as was this one without first receiving any written consent from the defendant.

An owner's rights in his chattel are protected to every reasonable extent. *Royle* v. *Worcester Buick Co.* 243 Mass. 143. There are equitable considerations in favor of a *bona fide* purchaser of such property entrusted by the holder of its legal title to the possession of another with authority to sell. The strong public policy in favor of such *bona fide* purchaser has been reflected in legislation. It is provided by the so called factor's act, G. L. (Ter. Ed.) c. 104, § 1: "A factor or other agent intrusted with the possession of merchandise . . . with authority to sell the same shall be deemed the true owner of such merchandise, so far as to give validity to any bona fide contract of sale made by him." This statute has been held to prevent the repossession of a motor vehicle sold to a *bona fide* purchaser by a dealer to whom the owner had entrusted its possession together with authority to sell it. *Jeffery* v. *M. W. Leahy & Co.* 258 Mass. 548.

The contention of the defendant is that the dealer, Stiles, was not a factor or agent, but merely one in possession of the automobile under the provisions of the so called trust receipt. When examined at large, the authorities are not in accord as to the legal consequences of such an instrument as was signed by Stiles and held by the defendant. All are in agreement that it creates no trust, because by its terms the finance company for which the automobile is held "in trust" retains legal title, which in a true trust vests in the trustee. It is not often spoken of as creating the relation of pledgor and pledgee, since the essence of the transaction is to place the possession of the automobile in the dealer and not in the finance company. It is more like a conditional sale, but the dealer is not seeking a position in which he will ever become sole owner; it is evident that the contract is one of financing rather than of sale. See *New Haven Wire Company Cases*, 57 Conn. 352, 383–386. Because of a natural and inherent disinclination toward such concealed ownership of chattels intended to be exposed for sale, some courts have treated the trust receipt as equivalent to a chattel

mortgage and required it to be a matter of public record. *General Motors Acceptance Corp.* v. *Berry*, 86 N. H. 280; *McLeod-Nash Motors, Inc.* v. *Commercial Credit Trust*, 187 Minn. 452. That hardly seems a logical position for these reasons: Where the finance company secured its legal title from the wholesale automobile distributor, the dealer's position under a trust receipt cannot be that of a mortgagor for he never had legal title and never conveyed it to the so called mortgagee. Moreover, the mortgagee may regain possession only on default, whereas the trust receipt permits repossession of the car at any time. This is also contrary to the theory on which has been developed the law of trust receipts in their original field as governing the relation of an importer of goods to his banker who buys from the foreign seller and takes title to himself. *Moors* v. *Wyman*, 146 Mass. 60. *Peoples National Bank* v. *Mulholland*, 228 Mass. 152, 155. *T. D. Downing Co.* v. *Shawmut Corp. of Boston*, 245 Mass. 106. *Brown* v. *Green & Hickey Leather Co.* 244 Mass. 168. The evidence in the case at bar warrants the conclusion that the contractual relationship between the defendant and Stiles under the instrument signed by the latter is to some extent that of principal and agent. The defendant, as owner, authorizes the sale of the automobile on certain conditions and leaves possession of the automobile in the hands of Stiles as its agent. The sale by the dealer is made by him as agent of an undisclosed principal. The fact that the principal does not enjoy all the gains or suffer the losses of ownership, such as any profit or loss realized upon the sale as compared with the purchase price, does not destroy the agency relationship but merely defines its limits. The finance company and the dealer each has manifested its consent that the dealer, on behalf and subject to the control of the finance company, take possession of the automobile and sell it. One having possession under a genuine trust receipt was recognized as an agent in *Moors* v. *Wyman*, 146 Mass. 60. In *T. D. Downing Co.* v. *Shawmut Corp. of Boston*, 245 Mass. 106, the particular conditions under which the trust receipt was given were held to prevent the creation of the relationship of principal and agent touching an obligation

in favor of a custom house broker respecting goods in a bonded warehouse in New York. The usual legal effect of a trust receipt not unlike that used in the case at bar was decided in *International Trust Co.* v. *Webster National Bank*, 258 Mass. 17, to give rise to an agency sufficient to bring the case under the provisions of G. L. (Ter. Ed.) c. 104. Although the authority to sell granted by the defendant to Stiles, the dealer in the instant case, was not under the terms of the instrument signed by him so broad as that given to the agent in the *International Trust Company* case, it is a permissible inference from the evidence as already recited that Stiles never was required to secure any written consent from the defendant to sell and had in reality a general authority to sell on behalf of the defendant.

Several cases have arisen in the Commonwealth where the decision has been reached without consideration of said c. 104. In *Simons* v. *Northeastern Finance Corp.* 271 Mass. 285, a purchaser of an automobile owned by the defendant but in possession of the dealer on an instrument somewhat resembling that signed by Stiles was protected. That decision rests on the grounds that the dealer was in truth the agent of the finance company and that the latter by its conduct was estopped to set up its title as against the plaintiff. That case is sufficient authority for the plaintiffs in the case at bar. In *Tripp* v. *National Shawmut Bank of Boston*, 263 Mass. 505, and *Denno* v. *Standard Acceptance Corp.* 277 Mass. 251, the purchasers of automobiles were protected against the claims of undisclosed prior owners partly on some provisions of the sales act. G. L. (Ter. Ed.) c. 106. See also *Jordan* v. *Federal Trust Co.* 296 Fed. Rep. (D. C. Mass.) 738. In *Hartford Accident & Indemnity Co.* v. *Callahan*, 271 Mass. 556, 563, the finance company was not allowed to replevin an automobile held on a trust receipt; it appeared that the bill of lading was made out to the dealer who thereafter delivered the trust receipt to the finance company. This was held to be nothing more than an unrecorded chattel mortgage. On the other hand, in a recent case where the circumstances showed that the purchaser of an automobile held on an instrument somewhat like that

signed by Stiles failed to investigate the dealer's title, when in the circumstances known to the purchaser some study of it ought to have been made, the court upheld the prior title of the finance company. *Essex County Acceptance Corp.* v. *Pierce-Arrow Sales Co. of Boston,* 288 Mass. 270. See also a similar case arising out of a conditional sales contract. *Marsh* v. *S. M. S. Co.* 289 Mass. 302.

In some of these cases the purchasers of the automobiles have not relied on the statutory protection given by G. L. (Ter. Ed.) c. 104, but have rested upon other contentions. The undisclosed principal long has been held bound by contracts made by his general agent within the latter's apparent authority, though outside his actual authority, even when the third person has dealt with the agent as if he were the owner. *Brooks* v. *Shaw,* 197 Mass. 376. See Am. Law Inst. Restatement: Agency, § 194, and comment. This principle of the law of agency is properly extended to automobile cases where the sale by the dealer, who is in truth a special agent of an undisclosed principal, is conducted in the usual and ordinary course of business with one who reasonably believes the agent to be owner. Am. Law Inst. Restatement: Agency, § 201, and illustration. In the instant case the application of G. L. (Ter. Ed.) c. 104, § 1, and these principles of the common law of agency result in the protection of the plaintiffs as purchasers from the dealer, Stiles.*

The defendant also contends that the plaintiffs were not *bona fide* purchasers of the automobile. The plaintiff Harold E. Handy, although having other employment, sold automobiles after May 28, 1931, for Stiles. That did not prevent him from buying property from Stiles. That the automobile remained part of the time in Stiles's garage and was operated under his dealer's registration plates might permit an inference that Stiles remained the true owner. But that inference is hardly consistent with the other undisputed circumstances indicating that the sale was completed

---

* See uniform trust receipts act recently adopted in New York, Laws of N. Y. 1934, c. 574, §§ 50–58, whereby a limited kind of public notice is required before the party secured by the trust receipt will be protected.

in good faith by the plaintiffs without knowledge on their part of the defendant or its connection with the automobile. Neither of the plaintiffs knew or had had business dealings with Stiles prior to May 28, 1931, the date of the sale to them. After delivery the plaintiffs paid for all oil and gasoline and took general care of the automobile; when Stiles wished to use it he requested the plaintiffs' permission to do so. The plaintiffs paid for the automobile by trading in their old one and delivering their note to Stiles. As *bona fide* purchasers, the title they secured pursuant to that sale is superior to that claimed by the defendant as prior owner. The defendant's repossession and refusal to deliver up possession of the automobile constituted a conversion and it is liable for the value of the automobile on that date.

*Exceptions sustained.*