ASSOCIATES DISCOUNT CORPORATION *vs.* C. E. FAY COMPANY.

Norfolk.    March 5, 1940. — December 31, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Factor's Act.   Agency*, Factor's act.   *Bona Fide Purchase.   Conversion. Trust Receipt.   Uniform Trust Receipts Act.*

An oral agreement in the nature of a "trust receipt" was not within the uniform trust receipts act, G. L. c. 255A, inserted by St. 1936, c. 264.

A finding was not warranted that a distributor of automobiles had converted a certain automobile to his own use by inducing its delivery to him in exchange by a dealer who he knew had possession of it with authority to sell "under some agency agreement" with its owner, a financing corporation, which was an oral agreement in the nature of a trust receipt; the distributor was entitled to have his transaction with the dealer considered a "bona fide contract of sale" within § 1 of the factor's act, G. L. (Ter. Ed.) c. 104.

TORT. Writ in the Municipal Court of Brookline dated November 5, 1937.

On removal to the Superior Court, the case was heard by *Williams, J.*

*D. Burstein,* for the defendant.

*K. C. Tiffin,* for the plaintiff.

LUMMUS, J. This is an action begun November 5, 1937, for the conversion of an automobile. The plaintiff finances the purchase of automobiles by retail dealers. Grannone Motors, Inc., hereinafter called Grannone, was such a dealer. The defendant was the distributor in Boston of automobiles made by the manufacturer of the automobile in question. When the automobile ordered by Grannone arrived in Boston, the plaintiff paid for it by arrangement with Grannone, and received a bill of sale of it dated July 16, 1937, from the defendant, which knew the relationship between the plaintiff and Grannone, and knew that while the plaintiff owned the automobile Grannone was to have possession of it for sale "under some agency agreement." Accordingly the defendant delivered the automobile to Grannone. The understanding between the plaintiff and Grannone was that expressed in a certain form of document called a "trust receipt," which however happened not to be executed with respect to this particular automobile. The form of that document, except for a draft in favor of the plaintiff attached to it, to be accepted by Grannone, appears in a footnote.[1] There was evidence that the blank before the word "days" usually was filled by the insertion of the figures 45 or 60.

---

[1] "TRUST RECEIPT

"The undersigned dealer hereby acknowledges that the following chattels complete with all standard catalogue attachments and equipment are the

| Make | Body or Type | Model | Year | Serial No. | Motor or Unit No. | Amount to Release from Trust |
|------|-------------|-------|------|-----------|-------------------|------------------------------|
|      |             |       |      |           |                   | $                            |
|      |             |       |      |           | Total             | $                            |

property of Associates Discount Corporation (hereinafter called 'Company') and represents that they are free from liens of every kind and agrees to hold said chattels at his (its) sole risk for the purpose of exhibiting and storing them with the understanding that none of said chattels shall be used for any other purpose except with the written consent of said Company.

About July 20, 1937, after the foregoing transactions had been completed, the defendant desired an automobile like the one in question, and induced Grannone to return the automobile in question and to accept in its stead another of the same value but of a slightly different model.  At that time the defendant had notice that the title to the automobile in question was in the plaintiff under a transaction in the nature of a trust receipt.  The judge found as follows: "While I find it was usual for automobile dealers to exchange cars with other dealers, I find that the plaintiff gave no authority to Grannone . . . to do this and that the defendant had no reason to believe that any such authority

"The undersigned dealer hereby further agrees to pay all taxes that may be levied on said chattels and all other expenses that may be incurred in connection with said chattels while they are in possession of the undersigned; that he (it) will not rent, drive, pledge, mortgage, or otherwise dispose of or encumber said chattels; that said chattels shall not be sold at less than the price thereof herein stated; that the proceeds of such sale shall be kept separate from the dealer's funds and on the day of the receipt thereof be transmitted to said Company; that if said chattels are sold on time, the promissory notes and the lien papers, evidencing the deferred payments agreed to be made thereon shall immediately be offered for sale to said Company at its then current rate of discount.  In the event the factory reduces the wholesale price of any of the above described chattels, the dealer agrees to pay to said Company on the date of such reduction an amount equal to such reduction.

"Should any of the said chattels be unsold at the end of .......... days from and after the date hereof, the undersigned dealer agrees to make full payment of the unpaid balance of the accepted draft hereto attached, or, from time to time, to make partial payments, if and when requested so to do by said Company.

"The undersigned dealer agrees to keep a separate account of each of said chattels held in trust by him (it) for said Company; that said undersigned dealer shall furnish to said Company or its assigns on demand a true and complete report of all sales of chattels made by him during the preceding month; that the undersigned dealer shall also permit said Company, its representatives or assigns to examine the undersigned dealer's books and the chattels in his (its) possession; that the undersigned dealer shall pay all costs, charges, expenses and disbursements, including reasonable attorney's fees, 15% of the amount involved in any legal proceedings, if lawful.

"Should said Company, its successors or assigns, deem it necessary to protect its or their rights hereunder, or in said chattels or any of them, by legal proceedings, or if the undersigned dealer becomes insolvent or fails to pay any acceptances due said Company, its successors or assigns, or, if said Company shall feel insecure, or, if the undersigned dealer breaches any of the covenants of this agreement, then all acceptances of said dealer held by said Company, its successors or assigns, shall at its or their option immediately become due and payable without notice, and all chattels covered by this agreement shall immediately be delivered to said Company or its order; that the terms and conditions hereof shall apply to and be binding upon the undersigned dealer, his (its) successors and assigns, and shall inure to said Company, its successors and assigns.

Date........19....          Dealer..........By.........."

had been given . . . ." It appeared that Grannone stopped doing business late in July, 1937, and that the plaintiff had not been repaid its investment in the automobile in question, which amounted to $614.

The judge, sitting without a jury, found for the plaintiff, and assessed damages at the agreed amount of $614. The defendant alleged exceptions.

The essence of the transaction expressed in the form of "trust receipt" already set forth in full, is that the plaintiff owns the automobile; that Grannone holds possession of it "in trust" for the plaintiff, with power as agent for the plaintiff to sell it, on certain conditions, paying the proceeds to the plaintiff; and that the automobile is to be delivered to the plaintiff whenever it "shall feel insecure." It is implied rather than expressed that the title to the automobile shall pass to Grannone whenever the draft is paid.

The transaction was not a pledge, for the plaintiff had full legal title and not a mere special property dependent on possession (*Moors* v. *Drury*, 186 Mass. 424, 425), to say nothing of the question whether the possession of Grannone could be considered that of the plaintiff. *Moors* v. *Wyman*, 146 Mass. 60, 63. *Peoples National Bank* v. *Mulholland*, 224 Mass. 448, 451. *T. D. Downing Co.* v. *Shawmut Corp. of Boston*, 245 Mass. 106, 113. *Handy* v. *C. I. T. Corp.* 291 Mass. 157, 160. The transaction was not a chattel mortgage, for the automobile never belonged to Grannone, and never was conveyed by it to the plaintiff. *Moors* v. *Drury*, 186 Mass. 424, 425. *Peoples National Bank* v. *Mulholland*, 224 Mass. 448, 452. *Simons* v. *Northeastern Finance Corp.* 271 Mass. 285, 291. *Hartford Accident & Indemnity Co.* v. *Callahan*, 271 Mass. 556. *Handy* v. *C. I. T. Corp.* 291 Mass. 157, 160, 161. The transaction was not a conditional sale by the plaintiff to Grannone, for Grannone was not to gain title upon paying a price to the plaintiff as a vendor. The event upon which the plaintiff was to lose title was not the payment of a price as such, but either the payment of an advance represented by a draft or a sale by Grannone under its power to some third person. *Simons* v. *Northeastern Finance Corp.* 271 Mass. 285, 290. *Handy* v. *C. I. T.*

*Corp.* 291 Mass. 157, 160.  See *Russell* v. *Martin*, 232 Mass.
379.   The name "trust receipt," given to the transaction,
is a misnomer, for Grannone held no title for the benefit of
the plaintiff.  *Handy* v. *C. I. T. Corp.* 291 Mass. 157, 160.
G. L. c. 255A (St. 1936, c. 264) § 1, definition of "Trustee."
But it is well settled that such a transaction is valid at com-
mon law so far that the title of the party financing the trans-
action is protected, except as against a vendee in some in-
stances under the so called factor's act, G. L. (Ter. Ed.)
c. 104, and general principles of agency.  *Peoples National
Bank* v. *Mulholland*, 228 Mass. 152, 155.   *Brown* v. *Green &
Hickey Leather Co.* 244 Mass. 168, 178.   *T. D. Downing Co.*
v. *Shawmut Corp. of Boston*, 245 Mass. 106, 112, 113.  *Handy*
v. *C. I. T. Corp.* 291 Mass. 157, 161–163.   *Charavay & Bod-
vin* v. *York Silk Manuf. Co.* 170 Fed. 819, discussing the
earlier cases.

The Uniform Trust Receipts Act, G. L. c. 255A, inserted
by St. 1936, c. 264, makes for trust receipt transactions
elaborate provisions which differ to some extent from com-
mon law requirements.   For example, compare § 2, cl. 1 (a)
(b) (ii) with *Simons* v. *Northeastern Finance Corp.* 271 Mass.
285, and *Hartford Accident & Indemnity Co.* v. *Callahan*, 271
Mass. 556, 562, 563.   Section 1 contains this definition:
"'Trustee' means the person having or taking possession
of goods, documents or instruments under a trust receipt
transaction, and any successor in interest of such person.
The use of the word 'trustee' herein shall not of itself be
interpreted or construed to imply the existence of a trust or
any right or duty of a trustee in the sense of equity juris-
prudence other than as provided by this chapter."   Section
2 restricts a "trust receipt transaction" to the delivery to
the trustee of goods, documents or instruments "against the
signing and delivery by the trustee of a writing" or "pur-
suant to a prior or concurrent written and signed agreement
of the trustee to give such a writing."   The present case, in
which there was no writing, falls outside the act.   § 2, cls.
1 (b) (i) (ii), 2; § 4, cl. 1.   It is left to be governed by the pre-
existing law.   § 17.   See 5 Fordham Law Review, 240, 246.

The so called factor's act (G. L. [Ter. Ed.] c. 104) in § 1

provides: "A factor or other agent intrusted with the possession of merchandise or of a bill of lading consigning merchandise to him with authority to sell the same shall be deemed the true owner of such merchandise, so far as to give validity to any bona fide contract of sale made by him." One who is the so called trustee under a trust receipt, with authority to sell (*H. A. Prentice Co.* v. *Page,* 164 Mass. 276; *Thacher* v. *Moors,* 134 Mass. 156, 163; *Royle* v. *Worcester Buick Co.* 243 Mass. 143) is a "factor or other agent" within that section. *International Trust Co.* v. *Webster National Bank,* 258 Mass. 17. *Handy* v. *C. I. T. Corp.* 291 Mass. 157, 162. Of course the automobile was "merchandise." *Jeffery* v. *M. W. Leahy & Co.* 258 Mass. 548, 550. If Grannone, the so called trustee, had authority to sell upon any terms, however limited, a "bona fide contract of sale made by him" upon other terms would be valid. The very purpose of the statute is to protect a purchaser where the agent has exceeded his authority. *Michigan State Bank* v. *Gardner,* 15 Gray, 362, 374. *H. A. Prentice Co.* v. *Page,* 164 Mass. 276, 281. *International Trust Co.* v. *Webster National Bank,* 258 Mass. 17, 22. Although at common law authority to sell does not include authority to exchange or barter (Am. Law Inst. Restatement: Agency, § 65 (1), Comment a. *Guerreiro* v. *Peile,* 3 B. & Ald. 616; *Howard* v. *Chapman,* 4 C. & P. 508; *Taylor & Farley Organ Co.* v. *Starkey,* 59 N. H. 142; *Hayes* v. *Colby,* 65 N. H. 192; *Kearns* v. *Nickse,* 80 Conn. 23; *Royle* v. *Worcester Buick Co.* 243 Mass. 143, 146; *Clough* v. *Whitcomb,* 105 Mass. 482, 485), in statutes the word sale is commonly construed as including exchange or barter (*Commonwealth* v. *Clark,* 14 Gray, 367, 372; *Howard* v. *Harris,* 8 Allen, 297; *Dowling* v. *McKenney,* 124 Mass. 478; *Gallus* v. *Elmer,* 193 Mass. 106, 109; *Cobb, Bates & Yerxa Co.* v. *Hills,* 208 Mass. 270) and in the factor's act the words "contract of sale," which formerly read "contract . . . for the sale" (St. 1845, c. 193, § 2), have already been so construed. *Michigan State Bank* v. *Gardner,* 15 Gray, 362, 374. See also *Handy* v. *C. I. T. Corp.* 291 Mass. 157, 158, 164.

The defendant was entitled to have its transaction with Grannone considered a "bona fide contract of sale" within

the statute, notwithstanding the fact that it knew the relationship between the plaintiff and Grannone and knew that while the plaintiff owned the automobile Grannone was to have possession of it for sale "under some agency agreement." The judge does not find that the defendant knew that Grannone had no authority to exchange the automobile. See *Goodwin* v. *Massachusetts Loan & Trust Co.* 152 Mass. 189, 194. Bad faith is not to be presumed. Notice to the defendant of circumstances that, if investigated, might have disclosed want of authority to exchange or barter the automobile, was not inconsistent with good faith or with a "bona fide contract." The statutory test is good faith, and not reason to believe in the existence of authority nor want of notice under principles of equity. Compare *Essex County Acceptance Corp.* v. *Pierce-Arrow Sales Co. of Boston,* 288 Mass. 270, 276. In many cases to which the protection of the factor's act extends, the existence of the agency is well known. The act would give but scant protection in commercial dealings if a purchaser with knowledge of the agency could not rely upon the statute, especially where the agency, though within the words of the statute, was a special one. See *Cairns* v. *Page,* 165 Mass. 552; *Marquandt* v. *Boston Young Women's Christian Association,* 282 Mass. 28; *Handy* v. *C. I. T. Corp.* 291 Mass. 157, 162, 163. We are unable to follow the decisions in New York which construe a somewhat similar statute so as to deny its protection to a purchaser who knew that the seller was an agent or factor and not the owner. *Stevens* v. *Wilson,* 6 Hill, 512; *S. C.* 3 Denio, 472. *Cartwright* v. *Wilmerding,* 24 N. Y. 521, 534, 535. *Allen* v. *St. Louis Bank,* 120 U. S. 20, 33, 34. Our construction is supported by Williston, Sales (2d ed. 1924) § 322, and by an opinion of Ryan, C.J., in *Price* v. *Wisconsin Marine & Fire Ins. Co.* 43 Wis. 267, 289 *et seq.* See also *Navulshaw* v. *Brownrigg,* 2 De G. M. & G. 441.

We think that the ruling requested by the defendant, that on all the evidence it was entitled to a finding as matter of law, should have been given.

*Exceptions sustained.*
*Judgment for the defendant.*