CLAUSON'S OF WELLESLEY, INC. *vs.* COOMBS & McBEATH, INC.

Suffolk. December 6, 1960. — March 21, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Factor's Act. Agency,* Scope of authority or employment, Factor's act.
*Practice, Civil,* Requests, rulings and instructions.

In an action by a corporate automobile dealer for conversion of a used
automobile sold and delivered by the plaintiff's sales manager to the
defendant, another dealer, at the defendant's place of business, and paid
for by the defendant by a check payable to the plaintiff's manager per-
sonally, a finding by the judge that the manager had not been entrusted
with possession of the automobile was not warranted on testimony by
the plaintiff's president and treasurer that the manager was in charge
of resale of used automobiles acquired by the plaintiff and was author-
ized to take them from the plaintiff's premises for purposes of selling
them; and a refusal of certain requests for rulings by the defendant
relating to the Factor's Act, G. L. c. 104, § 1, on the ground that the
statute was inapplicable in view of such finding was error entitling the
defendant to a new trial after a decision for the plaintiff.

TORT. Writ in the Municipal Court of the City of Boston
dated September 5, 1957.

Upon removal to the Superior Court the action was heard
without jury by *Donahue,* J., who found for the plaintiff.
The defendant alleged exceptions.

*Arthur H. Bloomberg,* for the defendant.

*Neil L. Lynch,* for the plaintiff.

WILLIAMS, J. This is an action of tort for conversion of
an automobile. The plaintiff and the defendant are both
dealers in automobiles—the plaintiff having a place of busi-
ness in Wellesley and the defendant in Boston. There was
evidence that about May 31, 1957, one Wedge, who was em-
ployed by the plaintiff as sales manager, brought a used
Ford car to the defendant's place of business in Boston
and attempted to sell it to Turner who was the used car
manager and vice-president of the defendant. Turner re-

fused to buy it and Wedge then told him he had a 1954 Mercury back at Clauson's which they might agree on. He called Clauson's by telephone and asked that the car be sent out. It arrived in about half an hour bearing dealer's plates and driven by a man wearing a "Clauson's uniform." Turner agreed to pay $1,150 for the car and Wedge asked him to make out the check to "Richard Wedge, d/b/a Wedge Motors, because he and Clauson had some deal whereby some of the cars at Clauson's were bought and sold in his name." A check so made out was given to Wedge and Turner took the car. On June 4, the defendant sold it to a customer for $1,375. The plaintiff never received the proceeds of the check which Turner had given Wedge.

Harvey Clauson, Junior, president and treasurer of the plaintiff, testified that the plaintiff acquired the Mercury on May 11, 1957, and that its fair market value was $1,600. Wedge "supervised the sales department as to the sale of our new cars that we have in stock and our used cars; that is, trading a used car on the purchase of a new car and the resale of the used car at retail." When customers traded their cars toward the purchase of new or used cars, Wedge was authorized to negotiate with them as to the price to be allowed for the cars they were trading. Wedge could set the price with the salesmen under his direction. He was permitted to take cars from the lot for the purpose of demonstrating or attempting to sell to customers. He was authorized to receive payment for the cars if he could effect the sale. If "Wedge came back with the cash or a check in the name of the company, it was permissible." He was not allowed to bring a check back made out to him for the purchase of a car.

Turner, called by the plaintiff, testified that he believed he was buying Clauson's car. He was aware that Wedge was employed by Clauson's as used car manager. He made no effort to ascertain whose automobile it was nor did he ask for a bill of sale. He said that "it is quite common in the trade of automobile dealers to purchase cars from a

corporation in other names than the corporation and in some cases in the names of individuals. In view of this custom, the defendant does not check on ownership when buying from a dealer . . . 'You can't or don't identify maybe as well as you should every purchaser you purchase from.' "

At the conclusion of the evidence, the defendant presented fourteen requests for rulings. Those expressly or impliedly denied and the rulings thereon were as follows: Request 3: "A factor or other agent intrusted with the possession of merchandise . . . with authority to sell the same shall be deemed the true owner of such merchandise, so far as to give validity to any bona fide contract of sale made by him." Ruling 3: "The agent here was not entrusted with possession." Request 5: "The very purpose of the statute is to protect a purchaser where the agent has exceeded his authority." Ruling 5: "The purpose of the statute is to protect a purchaser when an agent to whom act applies." Request 6: "The defendant is entitled to have its transaction with Wedge considered a 'bona fide contract of sale' within the statute, notwithstanding the fact that it knew the relationship between the plaintiff and Wedge and knew that while the plaintiff owned the automobile, Wedge was to have possession of it for sale 'under some agency agreement.' " Ruling 6: "Defendant did not know Wedge had possession of automobile under some agency agreement." Request 7: "Bad faith is not to be presumed. Notice to the defendant of circumstances that, if investigated, might have disclosed want of authority to exchange or barter the automobile, was not inconsistent with good faith or with 'bona fide contract.' The statutory test is good faith, and not reason to believe in the existence of authority nor want of notice under principles of equity." Ruling 7: "Chapter 104 has no application to dealing between Wedge and defendant under circumstances shown." Request 10: "If Wedge was the plaintiff's used car manager, then by virtue of his position he was clothed with authority in relation to sales." Ruling

10: "He was not clothed with authority to accept checks payable to himself." Request 13: "If Wedge was entrusted with possession of the car and had general authority to sell it, the sale was valid even if Wedge kept the money for himself." Ruling 13: "Request covered on previous findings and rulings." Request 14: "On all the evidence, the plaintiff is not entitled to recover." Ruling 14: "Denied." A motion by the defendant for a finding in its favor was denied subject to exception.

Request 3 embodies the provisions of the Factor's Act, G. L. c. 104, § 1, a statute which ordinarily is applicable to a transaction like that under consideration. The request appears to have been denied because of a finding that Wedge was not entrusted with possession of the car. This finding was not warranted by the evidence. Clauson, the plaintiff's president and treasurer, testified that Wedge was authorized to take cars from the lot for purposes of sale and to receive payment for them when sales were effected. This was an entrusting as the term is used in the statute. It does not require manual delivery but may consist in giving authority to take possession. *International Trust Co.* v. *Webster Natl. Bank,* 258 Mass. 17, 19. *Jeffery* v. *M. W. Leahy & Co.* 258 Mass. 548. *Osgood Bradley Car Co.* v. *Standard Steel Motor Car Co.* 259 Mass. 302. *Handy* v. *C. I. T. Corp.* 291 Mass. 157. *Associates Discount Corp.* v. *C. E. Fay Co.* 307 Mass. 577. See *Cairns* v. *Page,* 165 Mass. 552, 553–554. The general authority given Wedge distinguishes this case from those in which only a special authority was given. *H. A. Prentice Co.* v. *Page,* 164 Mass. 276. *Boston Supply Co.* v. *Rubin,* 214 Mass. 217, 220. See *Lynn Morris Plan Co.* v. *Gordon,* 251 Mass. 323; *International Trust Co.* v. *Webster Natl. Bank, supra,* p. 23; *Marsh* v. *S. M. S. Co.* 289 Mass. 302.

It was error to rule as the judge impliedly did that for the reason which he stated the statute was inapplicable. There was also error in the ruling on request 5 which, if we understand the ruling correctly, was not granted for the same reason as that in the case of request 3.

The errors in the rulings on requests 3 and 5 would not have been grounds for reversal if the judge had found that the transaction between Wedge and Turner was not a "bona fide contract of sale." Such finding would have been warranted since the judge was not required to credit Turner's testimony as to the custom between dealers and could have found that in making the check payable to Wedge he departed so far from standards of common prudence that his act amounted to bad faith toward the plaintiff. But there was no finding to this effect. The defendant attempted to raise the question of good faith by request 6 in language obviously taken from the opinion of this court in *Associates Discount Corp.* v. *C. E. Fay Co.* 307 Mass. 577, 582–583. The judge refused to grant the request because it included an erroneous assumption of fact. In the absence of a finding or ruling on the pertinent issue of good faith the ruling of the judge that the Factor's Act was not applicable rests on his erroneous conclusion that Wedge had not been entrusted with the car. The defendant has been deprived of a right to have the provisions of that act applied to the facts and is entitled to a new trial. It is unnecessary to discuss the other rulings or the denial of the defendant's motion.

The exceptions to the rulings on requests 3 and 5 are sustained.

*So ordered.*