O. M. SCOTT CREDIT CORPORATION *vs.* APEX INCORPORATED.

MARCH 17, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

ROBERTS, J. This action of replevin was heard by a justice of the superior court who thereafter gave decision to the plaintiff for possession, for damages in the amount of

$126.20, and for costs. From this decision the defendant is prosecuting a bill of exceptions to this court.

The plaintiff, a financing corporation, is affiliated with O. M. Scott & Sons Company, a manufacturer of garden supplies, hereinafter referred to as Scott. Scott distributes its products through authorized dealers who are restricted expressly to the sale thereof to the ultimate consumers. Mass. Hardware & Supply Co., Inc., hereinafter referred to as Massachusetts Hardware, is such an authorized distributor of the Scott products, and it is not disputed that the Scott products in its possession were held pursuant to a trust receipt which provided, inter alia, that the dealer "agrees to hold said products in trust for the sole purpose of making sales to consumers, functioning as a retailer and not as a wholesaler." The defendant, Apex Incorporated, hereinafter referred to as Apex, conducts a discount house and for the purpose of purchasing merchandise therefor also operates the Old Colony Distributing Company, hereinafter referred to as Old Colony.

It appears from the evidence that in January 1961 Jack Rabinowitz, employed by defendant in a managerial capacity, engaged in a discussion with Bernard J. Moran, an employee of Massachusetts Hardware, concerning defendant's difficulty in the procurement of merchandise not ordinarily available to it. In March 1961 Rabinowitz and Moran discussed specifically a sale to Old Colony of three hundred bags of a fertilizer manufactured by Scott. There is some conflict in the evidence concerning the substance of these discussions and particularly whether Moran knew that the sale of fertilizer to Old Colony was in fact a sale to defendant. Rabinowitz testified that Moran knew that defendant was purchasing the fertilizer, while Moran specifically denied having any such knowledge. The trial justice resolved the conflict in the evidence by giving greater credence to the testimony of Moran.

The trial justice summarized the evidence and made findings of fact as follows: "Rabinowitz frankly testified that Moran told him that Massachusetts Hardware could not sell to Apex and accordingly Rabinowitz suggested that the sale be made to Old Colony Distributing Company, a subsidiary of Apex, with the indication some of it would go to a large user, perhaps a golf course, and that later Moran agreed to sell 300 bags in that manner. It thus appears that Rabinowitz knew that a sale to Apex would be contrary to the authority and intention of the seller and if with that knowledge he used a subterfuge to bring it about he could not be found to have acted in good faith. If it is thus clear that Moran made it known he could not sell to Apex it seems most likely, and is found by the Court, that he told Rabinowitz why, namely the restriction upon Massachusetts Hardware to sell only at retail and not to discount houses, together with the information as to the bags bearing serial numbers which would show their origin, which, once disclosed to Scott, would result in loss to Massachusetts Hardware of a valuable line. On these facts the Court must find that the buyer was not acting in good faith as that term has significance at this point."

The trial justice, in our opinion, properly concluded that the sale here under consideration was not in the circumstances attempted in good faith. It is well settled that where litigants submit a case, on the facts as well as on the law, to a trial justice sitting without a jury, his findings of fact are entitled to great weight and will not be set aside unless clearly wrong. *Gettler* v. *Caffier*, 92 R. I. 19, 165 A.2d 730. After closely scrutinizing the transcript and considering the state of the evidence therein, we cannot say that the trial justice was clearly wrong in concluding that defendant did not act in good faith in this transaction.

We turn then to the questions of law raised by the parties. This is a situation, as we understand it, in which

plaintiff had perfected a security interest in the merchandise by virtue of its recordation of its trust receipt under the pertinent provisions of chap. 106, art. 9, of the Uniform Commercial Code as enacted in the Commonwealth of Massachusetts, hereinafter referred to as the code.

It is not disputed that on May 6, 1961, the date upon which the fertilizer was replevied, Massachusetts Hardware had not paid plaintiff the purchase price thereof. The plaintiff, in asserting a right to possession of the merchandise superior to that of defendant, contends that the security interest it had perfected continued in the collateral notwithstanding the sale thereof to defendant and in support thereof relies upon the pertinent provisions of §9-306 (2) of the code. That section provides in part as follows: "Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, * * * by the debtor unless his action was authorized by the secured party in the security agreement or otherwise * * *."

Basically, plaintiff's contention, as we understand it, is that the instant transaction has been brought within the provisions of the code and, therefore, the sale of the merchandise to defendant did not vitiate the security interest it had perfected in the collateral. In arguing the applicability of the provisions of art. 9 of the code to the instant transaction, it directs attention, first, to the general provisions of §9-102 (1) (a) and the specific provisions of §9-102 (2) which provide: "This Article applies to security interests created by contract including pledge, * * * trust receipt * * *."

One of defendant's two basic contentions appears to posit the applicability of the provisions of art. 9 of the code to the instant transaction, and defendant argues therefrom that the trial justice erred in finding that it did not take the merchandise free from the security interest of plaintiff that is continued in effect in the collateral after a

sale by the provisions of §9-306 (2). In so arguing defendant contends that it was a purchaser in the ordinary course of business as defined in §1-201 (9) of the code. The provisions of §9-307 (1) except such a purchaser in the ordinary course of business from the security interest, but, as we have already noted, the trial justice found that defendant did not purchase the merchandise in the ordinary course of business as contemplated in §9-307 (1) and defined in §1-201 (9), and we conclude that the trial justice did not err in making such finding.

The defendant's other contention is that art. 9 of the code has no application to the instant transaction, it being one to which the provisions of §1 of chap. 104 of the Annotated Laws of Massachusetts, hereinafter called the Factor's Act, exclusively apply and that, therefore, the trial justice erred in finding that art. 9 of the code amended the Factor's Act so as to bring this transaction within the purview of the relevant provisions of the code. This is to argue, as we understand it, that the legislature, in enacting art. 9 of the code intending to protect the security interests of the owners of merchandise in the possession of agents for sale, did not intend thereby to vitiate the protection given the purchaser in good faith of goods held in the possession of an agent with power to sell, which obviously was the purpose of the legislature in enacting the Factor's Act. In short, defendant, conceding that plaintiff had perfected a security interest in the goods pursuant to art. 9 of the code, argues that it took the goods free of that security interest because it had acquired them pursuant to a bona fide contract of sale within the contemplation of the Factor's Act. The pertinent provisions of that act read: "A factor or other agent intrusted with the possession of merchandise or of a bill of lading consigning merchandise to him with authority to sell the same shall be deemed the true owner of such merchandise, so far as to give validity to any bona fide contract of sale made by him."

Were we to concede that the enactment of the code did not diminish the protection given purchasers of merchandise under the Factor's Act, we would be unable to agree that defendant had acquired the merchandise pursuant to a bona fide contract for the sale thereof within the meaning of that act. We are unable to perceive that the good faith involved in a purchase in the ordinary course of business differs in any respect from the good faith involved in the contract of sale contemplated in the Factor's Act. To the contrary, we are of the opinion that the transaction here was such that it lacked good faith within the purview of either the code or the Factor's Act.

The trial justice in his decision directed attention to the code provisions holding that a buyer in the ordinary course of business is one who buys "in good faith and without knowledge that the sale to him is in violation of" the security rights of a third party. We agree that in such circumstance a buyer takes the goods free of security interest even though he knows there is a security interest therein. It is only when in addition thereto he knows that the sale violates some term of the security agreement not waived by the secured party, either in express terms or by conduct, that he takes subject to the security interest. It is our opinion that the trial justice has correctly disclosed the nature of the good faith contemplated by the provisions of the code relating to purchases in the ordinary course of business.

We do not perceive that this view as to what constitutes good faith in the context of the code is in any manner inconsistent with that which would constitute a bona fide contract of sale as contemplated in the Factor's Act. We are persuaded that such a bona fide contract of sale thereunder may exist even though the purchaser knew of the security interest in the goods when he does not know that the sale thereof to him in some manner violated that security interest or the terms thereof. In *Associates Discount*

*Corp.* v. *C. E. Fay Co.*, 307 Mass. 577, the court considered the requirement of the Factor's Act concerning the meaning of the phrase "bona fide contract of sale" as used therein and concluded that the act would not accomplish its purpose of protecting a purchaser of goods held by an agent if the mere knowledge of the agency imposed a burden upon him of ascertaining whether the sale was in violation of his authority.

The court in that case took the view that a transaction would be considered a bona fide contract of sale within the Factor's Act even though the buyer was aware that the possessor of the merchandise held for sale held it under some agency agreement. The court said at page 583: "Bad faith is not to be presumed. Notice to the defendant of circumstances that, if investigated, might have disclosed want of authority to exchange or barter the automobile, was not inconsistent with good faith or with a 'bona fide contract.' The statutory test is good faith, and not reason to believe in the existence of authority nor want of notice under principles of equity."

The facts as found by the trial justice establish that defendant not only knew that Massachusetts Hardware was in possession of the merchandise under a security agreement but knew also that the sale negotiated and executed with respect to the goods was contrary to the terms thereof and violative of plaintiff's security interest as so established. In these circumstances the transaction could not be found to constitute a bona fide contract of sale within the meaning of the Factor's Act, and, that being so, it would avail defendant nothing were this court to undertake to pass upon the question of whether the legislature of the Commonwealth of Massachusetts, in enacting the provisions of the code, intended thereby to repeal or amend the pertinent provisions of that act.

It is then our opinion that the trial justice did not err in holding that the defendant took the merchandise sub-

ject to the security interest of the plaintiff, it not having established that it was a buyer thereof in the ordinary course of business. Neither do we perceive that any prejudicial error, at least, inhered in his ruling that the Factor's Act was not controlling on the issues before him, the state of the evidence being such as to preclude any finding that the transaction constituted a bona fide contract of sale contemplated in that act. Because we so conclude, we are of the opinion that the defendant took the merchandise in the instant transaction subject to the security interest of the plaintiff and that, therefore, the plaintiff had a right to possession of the goods superior to that of the defendant and that replevin lies for the recovery thereof.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Tillinghast, Collins & Tanner, Robert M. Schacht,* for plaintiff.

*Lawrence S. Gates,* for defendant.

