THE BUDGET PLAN, INC. & another *vs.* JOSEPH R. SAVOY & another.

Hampden.    September 25, 1957. — November 6, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Sale,* Authority to sell, Transfer of title, Conditional sale. *Estoppel. Conflict of Laws.*

The law of Connecticut governed the determination of issues respecting an automobile as between an assignee of a conditional vendor of the automobile and persons claiming through a resale thereof by the vendor while in possession following repossession by the assignee, where all the transactions in question occurred in Connecticut and the automobile was there at all material times. [324]

Evidence of the circumstances in which an assignee of a conditional vendor of an automobile, after repossessing it from the vendee, placed it for a considerable time in the possession of the vendor, with whom the assignee had had a previous course of dealings respecting the resale of

repossessed automobiles, warranted a finding that, upon the vendor's selling the automobile under a second conditional sale contract, the assignee, as against the second vendee and an assignee of the second contract from the vendor, was precluded under Conn. Gen. Sts. (1949 Rev.) c. 309, §6638, from denying the authority of the vendor to make the second sale, even if the first contract and the assignment thereof had been duly recorded pursuant to Connecticut law. [325–326, 330]

TORT. Writ in the District Court of Springfield dated December 7, 1949.

Upon removal to the Superior Court the action was heard by *O'Brien*, J., who found for the plaintiffs. The defendants alleged exceptions.

*Lawrence D. Friedman*, for the defendants.

*John T. Quirk, Jr.*, for the plaintiffs.

CUTTER, J. On July 22, 1948, one Pacewicz, doing business with another as Bill & Ed's Garage (hereinafter called Garage), sold an automobile to one Hayes in Suffield, Connecticut, under a conditional sale agreement. This was assigned by Garage to National Finance Company (hereinafter called National). On July 27 the contract was recorded in the office of the town clerk of Suffield where Hayes resided. Hayes defaulted and one Savoy, the manager of National, caused one of National's collectors to repossess the automobile in September, 1948. Savoy testified that he did not authorize Garage to resell the automobile, but stored it with Garage because Hayes had said that he would pay in a few days. However, there was testimony (principally from one Pahorylo, a salesman who had left Garage's employ early in 1949) which would warrant findings that in discussions between representatives of National and Garage "it was . . . mentioned that some cars would be repossessed and resold on Bill and Ed's lot"; that National and Pacewicz "were doing business all during 1948," practically weekly, buying sale contracts, "maybe 50 in a period of a year"; that Pacewicz (but not Savoy) told a salesman of Garage to put the automobile here in question "on his list for sale"; that "the car was on the lot for resale for a period . . . [and] was on the price list kept by all salesmen"; that " 'many

a time' . . . Pacewicz and . . . Savoy arranged to have repossessed cars put on Bill and Ed's lot for resale"; and that "sometimes there was no conversation about cars but they were still put on the lot for resale."

On October 13, Lugas, one of the plaintiffs, bought the automobile in Connecticut from Garage. The Budget Plan, Inc. (hereinafter called Budget), also a plaintiff, took an assignment of the contract from Garage and had it filed on October 16 with the town clerk in the community where Lugas lived. Lugas duly made his instalment payments and drove the vehicle until April, 1949, when Savoy and National, claiming title to the automobile, caused it to be taken from Lugas's home in Hazardville. Pacewicz by this time had disappeared.

Lugas and Budget thereupon brought this action of tort for conversion against Savoy and another, doing business as National. The case was heard before a judge of the Superior Court sitting without a jury and he found for the plaintiffs.

The defendants duly excepted to the failure of the judge to rule that on all the evidence the plaintiffs were not entitled to recover and to give certain other rulings, which in substance were that the plaintiffs (a) were barred from recovery because of the notice afforded by the recording of the conditional sale contract between Garage and Hayes and of its assignment to National and (b) obtained no title to, or right to possession of, the automobile by virtue of its resale to Lugas by Garage.

Since the record indicates that all the contracts, sales, and assignments were made in Connecticut and that the automobile was there at all times pertinent to the issues raised, the law of Connecticut is applicable. See *Budget Plan, Inc.* v. *Sterling A. Orr, Inc.* 334 Mass. 599, 600–601, and authorities cited; Restatement: Conflict of Laws, §§ 255, 257, 258, 272, 283.

We assume without deciding (although the matter is not free from doubt; see *Budget Plan, Inc.* v. *Sterling A. Orr, Inc., supra,* at pages 601–602; *Rhode Island Hospital Na-*

*tional Bank* v. *Larson*, 137 Conn. 541, 546) that both con-
ditional sale contracts were adequately acknowledged and
recorded under Connecticut law. The fundamental ques-
tion is whether under Connecticut law, in view of the con-
duct of the parties, National is precluded (upon the evidence
most favorable to the plaintiffs and the inferences reason-
ably to be drawn from that evidence) from asserting, as
against Lugas and Budget, its interest in the automobile,
despite the prior recording both of the conditional sale agree-
ment between Garage and Hayes and of its assignment by
Garage to National.

Section 23 of the uniform sales act, in effect in Connecti-
cut, Conn. Gen. Sts. (1949 Rev.) c. 309, § 6638 (see G. L.
[Ter. Ed.] c. 106, § 25), reads in part: ". . . when goods
are sold by a person who is not the owner . . . and who
does not sell them under the authority or with the consent
of the owner, the buyer acquires no better title to the goods
than the seller had, unless the owner of the goods is by his
conduct precluded from denying the seller's authority to
sell. . . ." We need not decide whether, upon the evidence
summarized above, the trial judge would have been war-
ranted in inferring that Savoy in fact expressly authorized
Garage to resell the automobile. It is sufficient to deter-
mine whether the circumstances were such as to give rise to
an implication of authority and to preclude National from
denying Garage's authority to make the sale. Under the
comparable statutory provision in Massachusetts, G. L. (Ter.
Ed.) c. 106, § 25 (1), it "is not essential that technical es-
toppel be made out to constitute conduct . . . which pre-
cludes the owner from denying a seller's authority to sell"
(*Denno* v. *Standard Acceptance Corp.* 277 Mass. 251, 255–
256) but the bar to asserting title described in the section
has been described as resulting "in something akin to an
estoppel." *McGeever* v. *American National Red Cross, Bev-
erly Chapter*, 330 Mass. 239, 243.

The judge could here properly find more than a mere
granting to Garage, a dealer, of possession of the automo-
bile upon its repossession. There was evidence of (a) a

course of dealings by Garage for National connected with
the resale of repossessed automobiles; (b) the lapse of con-
siderable time between the entrusting of the automobile to
Garage, following its repossession from Hayes sometime in
September, and its resale to Lugas on October 13 and of an
even longer period before National made efforts to recover
possession from Garage, a circumstance which might fur-
nish some ground for inferring that the vehicle had been left
with Garage for resale; and (c) the presence of the auto-
mobile on Garage's lot actually being offered for resale over
a considerable period when there were frequent dealings be-
tween the parties and thus real opportunity for Savoy to
know the facts. This evidence, if believed, showed conduct
by Savoy and National which "cloaked the dealer [Garage]
— so far as the public was concerned — with authority to
sell the property." See *Zendman* v. *Harry Winston, Inc.*
305 N. Y. 180, 189–190, and note on this case in 36 A. L. R.
(2d) 1362. The judge could properly infer and conclude
(a) that Savoy, in behalf of National, permitted the re-
possessed automobile to remain at Garage (a dealer in auto-
mobiles) with the expectation that Garage would follow the
course of past dealings between the parties, and (b) that
these dealings had involved the listing for sale by Garage of
cars repossessed for National. *Baldwin* v. *Porter*, 12 Conn.
473, 482 (although holding that, on its particular facts, the
true owner was not estopped to assert his title), states the
Connecticut rule as follows: "It is a general principle, that
no man can . . . transfer title to that which .he does not
own . . . . To this rule there are exceptions; but they
are such as become necessary to protect innocent persons
against fraud; else they are founded upon matter of pol-
icy . . . . Therefore, it has been holden, that if the owner
of goods voluntarily permit another to hold himself out to
the world as being the true owner, and for this purpose, en-
trust him with the exclusive possession or other indicia of
title, under circumstances which would naturally tend to
mislead, he shall be concluded by the sale of it to an inno-
cent and mistaken purchaser." In stating these principles,

the court relied upon *Pickering* v. *Busk,* 15 East, 38, 43, a case which, it has been suggested, contains implications which may "go beyond the law." See Williston, Sales (Rev. Ed.) § 314, see also §§ 313, 315–317, where at page 249, it is pointed out that, even if entrusting possession to a dealer to obtain offers for its sale will not suffice to estop the true owner, "slight additional circumstances may turn the scale."

In *Romeo* v. *Martucci,* 72 Conn. 504, in protecting the original owner against a purchaser in bulk of the inventory of a dealer to whom the owner had shipped goods on consignment, the opinion (at page 510) recognized that a consignee, as distinguished from an ordinary bailee, "is authorized to sell in the ordinary course of business" at retail, as was done in the present case.

*O'Loughlin* v. *Erwin M. Jennings Co. Inc.* 107 Conn. 365, involved the sale of an automobile by a distributor to a dealer under a conditional sale agreement with a view to the resale of the automobile in the usual course of business. The dealer sold it to a customer, but, when the dealer did not pay for it, the distributor repossessed it. The court held (at page 368) that "[w]here the conditional vendee has actual or implied authority to sell, as distinguished from apparent authority, he conveys a greater title than he himself has by virtue of a power conferred upon him by the real owner. He is not the absolute owner, but has a special property coupled with a power to convey to a purchaser in the usual course of business the absolute title of his conditional vendor." The court also held (at page 369) that the recording of the conditional sale contract did not prevent a buyer in the ordinary course of business from relying on authority of the dealer-vendee to sell.

*Colonial Finance Co. Inc.* v. *DeBenigno,* 125 Conn. 626, arising under the uniform trust receipts act (now Conn. Gen. Sts. [1949 Rev.] c. 307, § 6544 et seq.; see G. L. [Ter. Ed.] c. 255A, inserted by St. 1936, c. 264), decided that a distributor of automobiles, acquired under a trust receipt given to a finance company, could transfer to a subdealer

(having no actual knowledge of the trust receipt situation) in the ordinary course of business good title to an automobile, so acquired, in part for a trade-in automobile and in part for other consideration, thus confirming the statutory recognition of an implied authority to resell in (page 631) "transactions . . . actually or presumably . . . within the intent of the parties." See *Handy* v. *C. I. T. Corp.* 291 Mass. 157, which refers to the earlier Massachusetts cases, and *Associates Discount Corp.* v. *C. E. Fay Co.* 307 Mass. 577. These cases, reaching the same result as the *O'Loughlin* case and the *Colonial Finance Co.* case, rest in part on the provisions of G. L. (Ter. Ed.) c. 104, § 1, of which no Connecticut counterpart has come to our attention. Their reasoning, however, is consistent with the general principles laid down in those Connecticut cases just mentioned. See also *Terry Square Motors, Inc.* v. *Haber,* 137 Conn. 377 (where a used car dealer gave a salesman possession of a used automobile together with a signed and partly filled out invoice to another dealer, which enabled the salesman to sell the automobile to an innocent purchaser). Compare *Kearns* v. *Nickse,* 80 Conn. 23 (horse dealer entrusted with a horse by its owner, not shown to have had prior business with the dealer, with a view to sale to a named person for $100, held to have no authority to trade it for another horse).

The defendants place some reliance on *New Britain Real Estate & Title Co.* v. *Hartford Acceptance Corp.* 112 Conn. 613, where a dealer in automobiles sold a vehicle to one Cox by conditional sale and assigned the vendor's interest to finance company A. The contract and assignment were duly recorded. Cox became in default and, without the knowledge of finance company A, the dealer again sold the automobile to Cox on a new conditional sale contract. This was assigned to finance company B, which had no actual knowledge of the earlier transaction or of its assignment to finance company A. B later took possession of the automobile and sold it. This was held to be a conversion of A's interest, of which, said the court (at pages 616–617), B had

constructive notice from the public record. The case is distinguishable from the present one in that, in the *New Britain* case, there was no evidence that finance company A entrusted the vehicle to the dealer after a repossession or that there were other circumstances from which authority in the dealer to resell it could be implied. See *Lynn Morris Plan Co.* v. *Gordon*, 251 Mass. 323, and *Colella* v. *Essex County Acceptance Corp.* 288 Mass. 221, 225, 228, for cases similarly distinguishable.[1]

The general subject has recently been carefully considered in *Zendman* v. *Harry Winston, Inc.* 305 N. Y. 180, where a diamond merchant, as part of a regular course of dealings, sent a ring to an auction company, with a memorandum that the ring was for examination only and that title was not to pass until the auctioneer made a selection and the merchant had issued a bill of sale. The auctioneer exhibited the ring in a public show window with the knowledge of the merchant. The New York court held that the merchant was (page 188) "responsible for the appearance of a general, unrestricted authority in" the auctioneer to sell the ring and that there were sufficient facts (in addition to merely entrusting the auctioneer with possession) to bar the merchant from asserting his title.

Similarly, we think, in view of National's action in leaving the repossessed car with Garage for so long a period, on an ambiguous basis which might reasonably be construed as contemplating a resale, that we are not warranted (see *Zendman* case at page 191) in "placing upon an innocent

---

[1] For other Massachusetts cases not here applicable see *Royle* v. *Worcester Buick Co.* 243 Mass. 143, 145–146 (after a general finding for the true owner, this court held that the facts appearing at the trial did not require "the inference as matter of law that . . . [the dealer] had authority to sell the car" or an "estoppel against the true owner"); *Marsh* v. *S. M. S. Co.* 289 Mass. 302 (purchaser could have been found to have had actual notice that one unauthorized seller was a conditional vendee; also dealers subsequently reselling automobile were not entrusted with it for sale by its true owner). Compare *Essex County Acceptance Corp.* v. *Pierce-Arrow Sales Co. of Boston*, 288 Mass. 270 (one, not a retail purchaser, taking a security interest in an automobile from an unauthorized dealer, was not protected against true owner and was charged with notice of the owner's possible interest); *McGeever* v. *American National Red Cross, Beverly Chapter*, 330 Mass. 239 (dealer, from whom retail purchaser of automobile bought, had not been entrusted with possession by the true owner with authority, express or implied, to sell it).

purchaser the burden and consequences of the very fraud which" National's conduct and laxity have at least made possible. The decisions, to which we have referred already, lead us to believe that a Connecticut court would reach this conclusion.[1]

Lugas and Budget are not barred by the recording of the conditional sale agreement between Garage and Hayes and of the assignment to National of Garage's interest in that agreement pursuant to Conn. Gen. Sts. (1949 Rev.) c. 310, § 6692, which requires that conditional sale contracts be "filed . . . in the town clerk's office in the town where the vendee resides . . . ." In *New Britain Real Estate & Title Co.* v. *Hartford Acceptance Corp.* 112 Conn. 613, 616–617, *supra,* compliance with the recording statute was held to give constructive notice of the recorded instrument to a person taking a subsequent assignment from the conditional vendor. Compare *Rhode Island Hospital National Bank* v. *Larson,* 137 Conn. 541, 543. However, in the *New Britain* case there was no basis for finding that the dealer, who made the wrongful resale of the automobile, had implied authority (from the true owner, the first assignee from the conditional vendor) to do so. We think that the reasoning of *O'Loughlin* v. *Erwin M. Jennings Co. Inc.* 107 Conn. 365, 368–369, indicates that the constructive notice afforded by the recording of a conditional sale agreement does not affect the right of a purchaser from a dealer who has been given possession of the automobile, the subject of the conditional sale, under circumstances from which authority to resell it in the ordi-

---

. [1] See the recently added paragraph (3) of Restatement Second, Agency, Tentative Draft No. 4, April 19, 1956, § 201, page 100, which reads in part: "(3) Where the principal delivers a chattel to a dealer . . . to be . . . exhibited for sale, an unauthorized sale . . . by such dealer in accordance with the normal business practices to one who reasonably believes the dealer to be the owner, binds the owner, although the dealer was not authorized to sell without the consent of the owner . . ." and note by the reporter (Professor Warren A. Seavey) at pages 129–140. See also § 2–403 of the Uniform Commercial Code, enacted in Massachusetts as G. L. (Ter. Ed.) c. 106 by St. 1957, c. 765, § 1, effective October 1, 1958, under which, if it were applicable, the result which we reach would seem to be required. See, as to respect to be given to the code where not in conflict with statutory or settled case authority, *Fairbanks, Morse & Co.* v. *Consolidated Fisheries Co.* 190 Fed. (2d) 817, 822, n. 9 (C. A. 3).

nary course of business can be implied. The *New Britain* case, accordingly, is not controlling here.

The rulings, which the trial judge declined to make, were properly refused.

*Exceptions overruled.*