COMMERCIAL CREDIT CORPORATION *vs.* STAN CROSS
BUICK, INC. & another.

Middlesex.    October 6, 1961. — February 13, 1962.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Sale,* Authority to sell. *Bailment. Agency,* What constitutes, Ratification.
*Estoppel. Conversion. Bona Fide Purchaser. Auction. Conflict of
Laws. Evidence,* Judicial notice. *Practice, Civil,* Requests, rulings and
instructions. *Election. Words,* "Auctioneer."

The law of Maine governed the determination of issues in an action for
conversion of an automobile as between an assignee of a conditional sale
contract of the automobile, an auctioneer to whose place of business in
Massachusetts it was brought from Maine by the conditional vendor
following the assignee's repossession of it from the conditional vendee
and its storage with the conditional vendor, and a buyer of the automo-
bile who received possession of it at the auctioneer's premises from the
conditional vendor, where, up to the time the automobile was brought to
and sold in Massachusetts, all agreements and acts involving the auto-
mobile took place in Maine while it was located there and its removal
from Maine to Massachusetts was without the knowledge or consent of
the assignee.   [624–625]

This court was not obliged to take judicial notice of the applicable law of
another State where that law was not brought to the attention of the
trial court or this court; it might be assumed in such circumstances that
the common law of that State was the same as that of Massachusetts.
[625]

In view of the limited issues raised in an action, thirty-four requests for
rulings filed by a party were deemed excessive in number by this court.
[626]

Under an agreement between an assignee of a conditional sale contract of
an automobile and the conditional vendor whereby, upon the assignee's
repossession of the automobile from the conditional vendee, the condi-
tional vendor was to purchase it from the assignee for cash and pending
such purchase the assignee stored it without charge on the premises of
the conditional vendor, who was stated to be merely "a bailee with the
duty to safely store . . . and redeliver . . . to . . . [the assignee] on
demand," the conditional vendor before purchasing the automobile from
the assignee had no authority to resell it; it was immaterial that upon
repossession of the automobile the assignee had received the conditional
vendee's permission to resell it at a private sale rather than at public
auction as provided in the conditional sale contract.   [626]

Whether one who sold an automobile in his possession had apparent
authority from its owner to sell it was immaterial where it did not

appear that the seller professed to be acting as agent of the owner or that the buyer dealt with the seller other than as the owner.   [626]

Prior to the effective date of the Uniform Commercial Code, the owner of an automobile, by merely storing it with a dealer, was not estopped to maintain an action for its conversion against one who, as a bona fide purchaser for value, subsequently bought it from the dealer, took possession of it, and resold it.   [626–628]

The owner of an automobile did not ratify a wrongful sale of it by a dealer with whom he had stored it, and was not estopped from maintaining an action for its conversion against the buyer from the dealer, merely by reason of having demanded indemnification from the dealer and having received a part payment from the dealer after learning of the sale.   [628–629]

An auctioneer, to whose place of business an automobile was brought by an automobile dealer without the knowledge or consent of, or authority to sell from, its owner and who called for bids on the automobile and struck a bargain with a buyer and furnished a "Title Warranty and Bill of Sale" signed by the dealer as seller, by the buyer, and by the auctioneer as guarantor of the buyer's title, was not liable to the owner for conversion where it did not appear that the auctioneer was aware of the dealer's want of authority to sell the automobile or at any time had possession of it and it did appear that the dealer "gave possession of . . . [the] automobile" to the buyer after the auction sale and was paid the purchase price by him.   [629–630]


TORT. Writ in the Superior Court dated February 4, 1959.

The action was heard by *Voke,* J.

*J. Chester Webb,* for the defendants.

*Lawrence A. Sullivan,* for the plaintiff.

KIRK, J.   In this action of tort for the conversion of a motor vehicle, tried before a judge without jury, there was a finding for the plaintiff against both defendants. The case comes to us on the defendants' exceptions to the refusal of the judge to find for the defendants as a matter of law, and to his refusal to grant certain requested rulings, the substance of which will appear in the course of this opinion.

The bill of exceptions recites evidence tending to show the following. In October, 1957, one Lloyd, an automobile dealer doing business in Maine, sold the vehicle in question to one Power under a conditional sale contract which Lloyd assigned to the plaintiff (hereinafter called Commercial).

Upon Power's default Commercial repossessed the vehicle and received Power's permission to sell the vehicle at a private sale rather than at public auction as provided for in the conditional sale contract. The parties are agreed that on February 26, 1958, Commercial owned and had possession of the vehicle.

At the time of the repossession by Commercial there subsisted between Commercial and Lloyd a "Reserve Agreement" which provided, among other things, that if Commercial should repossess a vehicle under an instrument assigned to it by Lloyd, Lloyd would repurchase the vehicle from Commercial for cash; and that pending such repurchase by Lloyd, Commercial could store the repossessed vehicle on Lloyd's premises without charge, Lloyd to be merely "a bailee with the duty to safely store . . . and redeliver . . . to . . . [Commercial] on demand." Pursuant to this agreement, the vehicle in question was turned over to Lloyd on March 2 or 3, 1958. On April 15, 1958, Lloyd brought the vehicle to the defendant Concord Auto Auction, Inc. (hereinafter called Concord), at the latter's place of business in Acton, Massachusetts, where Concord conducted a wholesale used car market. Lloyd paid Concord $10 to "cry" the vehicle which was on that day sold and delivered by Lloyd to the defendant Stan Cross Buick, Inc. (hereinafter called Stan Cross), which paid the purchase price to Lloyd and gave $5 to Concord. Coincidental with this transaction Concord furnished a form bearing the caption "Title Warranty and Bill of Sale" which was signed by Lloyd as seller, by Stan Cross as buyer and by Concord as guarantor of Stan Cross's title. The next day Stan Cross resold the vehicle. When, two weeks later, Commercial learned of the sale by Lloyd, it demanded of Lloyd that he pay to it the purchase price and of Stan Cross and Concord that they deliver up the vehicle. A business entry on Commercial's records indicated a payment by Lloyd to it on May 31, 1958, of $90.21.

Preliminary to the discussion of the substantive issues, we point out that it is clear from the record that up to the

time that the vehicle was brought to, and sold in, Massachusetts by Lloyd, all agreements and acts involving the vehicle took place in Maine while the vehicle was located in Maine. It further appears from the record that the removal of the vehicle from Maine to Massachusetts by Lloyd was without the knowledge or consent of Commercial. Under these circumstances we think that, although the overt acts which constitute the alleged conversion took place in Massachusetts, according to the principles of conflict of laws we would look to the law of Maine to determine not only the question of Lloyd's authority to sell the vehicle (see *In the Matter of Estate of Everett,* 112 Vt. 252, 255; Restatement: Conflict of Laws, § 343) but also the question of the applicability of the principles of apparent authority and estoppel, all of which issues have direct bearing on the property rights underlying this action of conversion. See *Langworthy* v. *Little,* 12 Cush. 109, 111; *Edgerly* v. *Bush,* 81 N. Y. 199, 203–205; Beale, Jurisdiction over Title of Absent Owner in a Chattel, 40 Harv. L. Rev. 805; Goodrich, Conflict of Laws (3d ed.) § 156; Note, 47 Col. L. Rev. 767; Restatement: Conflict of Laws, § 49 and comment c; id. § 102 and comment c. See also, Restatement 2d: Conflict of Laws, Tent. draft no. 4, April 5, 1957, § 98 and comment g; id. Tent. draft no. 5, April 24, 1959, introductory note, pp. 78–81, and § 254a. Compare *Zendman* v. *Harry Winston, Inc.* 305 N. Y. 180, 183–184. Cf. *Budget Plan, Inc.* v. *Savoy,* 336 Mass. 322, 328.

Before us and at the trial, however, all parties have relied exclusively upon the law of Massachusetts, and there has been no intimation that the common law of Maine is different from our own. In these circumstances we may assume that the common law of Maine is the same as ours and we are not obliged under G. L. (Ter. Ed.) c. 233, § 70, to make a search of that law. *Tsacoyeanes* v. *Canadian Pac. Ry.* 339 Mass. 726, 727–728, and cases cited.[1]

---

[1] The defendants, citing G. L. (Ter. Ed.) c. 106, §§ 42 (1) (a), 45 (1) (b), have argued that Commercial lost an unpaid seller's lien when it delivered the car to Lloyd. It is sufficient to say that regardless of choice-of-law rules, the existence of such a lien presupposes a sale and there is no evidence that Lloyd had repurchased the car although his contract with Commercial required him to purchase it.

Also by way of preliminary we mention that the defendants submitted thirty-four requests for rulings. In view of the limited issues raised we think this number is excessive and that the judge would have been justified in requiring the defendants to refashion the requests and reduce the number before passing upon any of them. See *Hogan* v. *Coleman,* 326 Mass. 770, 772–773; *Commonwealth* v. *Greenberg,* 339 Mass. 557, 584–585. We shall dispose of the issues without reference to the requests seriatim. See *Elm Farm Foods Co.* v. *Cifrino,* 328 Mass. 549, 553.

The judge correctly refused to rule that Lloyd had authority to sell the motor vehicle. Lloyd was merely a bailee for storage until he fulfilled his contractual obligation to buy the car. The fact that Power had given to Commercial permission to resell at a private sale did not enhance Lloyd's authority by inference or otherwise. Compare *Budget Plan, Inc.* v. *Savoy,* 336 Mass. 322, 323–326. The defendants' contention that Lloyd had apparent authority to sell the car is answered by the rule that a third person "cannot set up an apparent authority unless he relied on it when he entered into the transaction; and also by the rule that a person who deals with an agent not as agent but as principal cannot set up an apparent authority which the agent may be said to have." *Essex County Acceptance Corp.* v. *Pierce-Arrow Sales Co. of Boston,* 288 Mass. 270, 276. Restatement 2d: Agency, §§ 8, 27. There is no evidence that Lloyd professed to be acting as an agent in the sale of the car or that Stan Cross believed that Lloyd was other than the owner. In such circumstances the concept of apparent authority is not pertinent and the requested rulings regarding it were properly refused.

The defendants' main contention is to the effect that Commercial's conduct precludes it from enforcing its legal title to the car against a bona fide purchaser. We have previously considered the rights of a bona fide purchaser from a person to whom a motor vehicle had been entrusted by the owner. See *Handy* v. *C. I. T. Corp.* 291 Mass. 157, and cases cited; *Budget Plan, Inc.* v. *Savoy,* 336 Mass. 322, 329n.

An examination of the cases discloses, however, that whenever the bona fide purchaser has prevailed over the true owner, there have been other elements, in addition to those presently before us, which have entitled the bona fide purchaser to protection upon consideration of common law principles, *Simons* v. *Northeastern Fin. Corp.* 271 Mass. 285, 290–291, see *Handy* v. *C. I. T. Corp.* 291 Mass. 157, 163; or which have brought the case within the provisions of an applicable statute, for example, G. L. (Ter. Ed.) c. 104 (Factor's Act), *Jeffery* v. *M. W. Leahy & Co.* 258 Mass. 548, 550. *Handy* v. *C. I. T. Corp.* 291 Mass. 157, 163, or G. L. (Ter. Ed.) c. 106 (Uniform Sales Act), *Denno* v. *Standard Acceptance Corp.* 277 Mass. 251, 254–256. See also, as to G. L. c. 255A, inserted by St. 1936, c. 264 (Uniform Trust Receipts Act), *Associates Discount Corp.* v. *C. E. Fay Co.* 307 Mass. 577, 581–583. All of the cases cited have in common with the one before us the fact that the person to whom the vehicle was entrusted and by whom it was sold to a bona fide purchaser was a dealer in such vehicles. In each of the cited cases, however, there was evidence that, in addition to the entrusting of possession by the owner to the dealer, the latter either had a general authority to sell the vehicle, *Jeffery* v. *M. W. Leahy & Co.* 258 Mass. 548, 550, *Handy* v. *C. I. T. Corp.* 291 Mass. 157, 162, *Associates Discount Corp.* v. *C. E. Fay Co.* 307 Mass. 577, 582; or was authorized or knowingly permitted by the owner to exhibit the vehicle for sale on its premises. *Simons* v. *Northeastern Fin. Corp.* 271 Mass. 285, 290. *Denno* v. *Standard Acceptance Corp.* 277 Mass. 251, 252–253. See Restatement 2d: Agency, § 201 (3), and Reporter's Notes to § 174, Appendix p. 260. In no case in our jurisdiction has the true owner been prevented from asserting his title to a motor vehicle against a bona fide purchaser merely because he had entrusted the vehicle to another, even though the other was a dealer.[2] It is our

---

[2] But see G. L. c. 106, Uniform Commercial Code enacted by St. 1957, c. 765, § 1, effective October 1, 1958. Section 2–403 (2) states, "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." See *Independent News Co. Inc.* v. *Williams,* 293 F. 2d 510, 512–514 (3d Cir.).

opinion that no estoppel arises here against Commercial from the mere fact that Lloyd was its bailee for storage pending his purchase of the car for cash. See *Royle* v. *Worcester Buick Co.* 243 Mass. 143; *Marsh* v. *S. M. S. Co.* 289 Mass. 302; *McGeever* v. *American Natl. Red Cross, Beverly Chapter,* 330 Mass. 239. Compare *Budget Plan, Inc.* v. *Savoy,* 336 Mass. 322, 325–326 (where further facts, not present here, giving rise to an estoppel could have been found). See, generally, *Zendman* v. *Harry Winston, Inc.* 305 N. Y. 180. Requests based on the premise of estoppel were rightly denied.

Nor does the fact that Stan Cross was a bona fide purchaser for value and without notice render it immune to an action for conversion for having purchased, taken possession of and resold the vehicle. *Row* v. *Home Sav. Bank,* 306 Mass. 522, 525. *Lehan* v. *North Main St. Garage, Inc.* 312 Mass. 547, 548, and cases cited. *Tourles, petitioner,* 341 Mass. 305, 308. Restatement: Torts, § 229. There was no reversible error in the denial of requests predicated on that fact.

The collateral contentions of the defendants that Commercial is conclusively barred from recovery in conversion because it demanded indemnification from Lloyd and because it allegedly ratified the sale by accepting an instalment payment after it had learned of the sale cannot be sustained. There can be no ratification where the seller (Lloyd) neither acted nor purported to act on behalf of a principal (Commercial). *Allen* v. *Liston Lumber Co.* 281 Mass. 440, 446, and cases cited. *Wedgwood* v. *Eastern Commercial Travelers Acc. Assn.* 308 Mass. 463, 468. Compare Restatement 2d: Agency, § 85. Nor is the acceptance by Commercial of part payment from Lloyd after knowledge of the wrongful sale sufficient of itself to require a finding that Commercial elected to affirm the sale by Lloyd and to relinquish its right to sue for conversion. Without additional evidence such an acceptance of part payment from a wrongful converter (Lloyd) is as consistent with a continued repudiation of the unlawful sale as it is with an

affirmance of the sale. *Bradley* v. *Brigham,* 149 Mass. 141, 144–145. See Restatement 2d: Agency, §§ 98–99; Anno. 3 A. L. R. 2d 218, 228.

The judge was in error, however, in his refusal to rule that Concord was not liable in conversion. In disposing of the ruling the judge stated that Concord "acted as an auctioneer" and "exercised dominion" over the motor vehicle. The characterization of Concord as an "auctioneer" is not conclusive as to the nature of Concord's conduct with respect to the vehicle. In *White* v. *Dahlquist Mfg. Co.* 179 Mass. 427, 432–433, where the court discussed the authority of an auctioneer it was said, "The word 'auctioneer' is sometimes used to designate the crier who simply calls for bids and strikes the bargain at an auction sale." We think that this defines the role of Concord in the sale to Stan Cross. It does not appear that Concord had any awareness of Lloyd's want of authority or that Concord at any time had possession of the vehicle. To the contrary it is part of the agreed facts that "Lloyd . . . gave possession of . . . [the] automobile . . ." to Stan Cross after the sale. We do not think that the actions of Concord under these circumstances amounted to such an exercise of dominion and control over the vehicle as to constitute a conversion. See *Jackson* v. *Klinger,* 33 Misc. (N. Y.) 758; Restatement: Torts, § 233 (2),[3] and comment b; Harper & James, Torts, § 2.19, pp. 153–154. (Cf. footnote 3 below.)

The case of *Robinson* v. *Bird,* 158 Mass. 357, relied upon by the plaintiffs is distinguishable in that the auctioneer, who was held liable, not only negotiated the sale but also "sold the property," "paid over the proceeds," less his

[3] "An agent or servant who negotiates a transaction for the purpose of transferring a proprietary interest in a chattel is not liable for a conversion to another who is entitled to its immediate possession if the actor does not deliver the chattel pursuant to such transaction and if the agent or servant neither knows nor has reason to know that his principal or master does not have authority so to dispose of it." This subsection, which originally appeared in the 1934 edition of the Restatement: Torts, was deleted from the 1948 Supplement because of an apparent conflict with Restatement: Agency, § 349. It was later decided that the quoted subsection was sound in principle and supported by the comparatively few decisions on the subject. It was, therefore, incorporated in Restatement 2d: Torts, Tent. draft no. 3, April 18, 1958, page 37.

commission, to the seller, and, it appears, gave possession to the buyer.  158 Mass. 357, 358–359.  *Robinson* v. *Bird* is of special interest to us for another reason.  In it at page 360 Holmes, J., cites *Cochrane* v. *Rymill,* 40 L. T. (N.S.) 744.  An examination of the latter case shows that, although the particular defendant was held liable in conversion, Bramwell, L.J., uses the following peculiarly apt and homely illustration: ''Supposing a man were to come into an auctioneer's yard, holding a horse by the bridle and to say, 'I want to sell my horse; if you will find a purchaser I will pay commission.'  And the auctioneer says: 'Here is a man who wants to sell a horse; will anyone buy him?'  If he then and there finds him a purchaser, and the seller himself hand over the horse, there could be no act on the part of the auctioneer which could render him liable to an action for conversion.''  We hold that Concord's acts do not render it liable in conversion.

The fact that all parties to the transaction signed the title warranty and bill of sale adds nothing to the plaintiff's action of conversion against Concord.  Rather than being evidence of an assertion of dominion or control over the vehicle by Concord, it was indicative of recognition by all concerned of the possibility of Lloyd's title being defective, and was a promise by Concord to hold the buyer harmless if that should prove to be the case.

Other exceptions argued by the defendants have become immaterial because of what we have said and we do not discuss them.  The exceptions of the defendant Stan Cross Buick, Inc., are overruled.  The exceptions of the defendant Concord Auto Auction, Inc., are sustained and judgment is to be entered for that defendant.

*So ordered.*