THE WRENTHAM COMPANY *vs.* IRVING CANN.

Suffolk. February 5, 1963. — April 5, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Contract,* Of employment, Covenant against competition. *Equity Jurisdiction,* Covenant against competition. *Equity Pleading and Practice,* Master: findings; Decree. *Conflict of Laws.*

In a suit in equity in Massachusetts by a Connecticut corporation to enforce against a former employee a covenant against competition in his contract of employment with the plaintiff made in Connecticut, the law of Massachusetts was applied where both parties relied on it and there was nothing to show that the law of Connecticut was different. [741]

In a contract of employment terminable by either party upon notice, a covenant against competition by the employee after termination of the contract was not invalid for want of mutuality. [741]

A confirmed master's report in a suit in equity established the facts, and
it was the duty of the judge and of this court on appeal to see that the
proper decree was entered on those facts.   [741.]

On the record in a suit in equity against a former salesman of the plain-
tiff to enforce a covenant against competition in the defendant's con-
tract of employment, the final decree went beyond the covenant in en-
joining the defendant from "communicating with" as well as soliciting
customers of the plaintiff; was too broad in enjoining the defendant
from soliciting any of the plaintiff's customers and should be limited in
that respect to the area where the defendant had worked for the plain-
tiff; properly limited the injunction to a period of three years although
the covenant specified five years; improperly dealt with certain matters
covered by the covenant but not presented by the facts found; and
properly ordered the defendant to return to the plaintiff a list of cus-
tomers taken by the defendant upon leaving the plaintiff's employ.
[742–743]

BILL IN EQUITY filed in the Superior Court on July 20,
1961.

The suit was referred to a master, whose report was con-
firmed.   The defendant appealed from a final decree en-
tered by *Spring*, J.

*Edgar L. Kelley* for the defendant.

*Joseph G. Crane* for the plaintiff.

KIRK, J.   The plaintiff (Wrentham) seeks to enforce the
restrictive covenant in a contract of employment executed
on July 15, 1958, against a former employee, the defendant
Cann.   Cann contests the enforceability of the covenant
and, by way of counterclaim, asks that Wrentham be or-
dered to pay him $250.94 for unpaid salary, commissions
and disbursements, and that an accounting be had to deter-
mine the value of certain shares of stock now held by him in
Wrentham.

The case was referred to a master on the limited issue of
the enforceability of the covenant not to compete.   The re-
port contained subsidiary and general findings.   Wrentham
made several objections.   After the filing of the report, the
objections, treated as exceptions, were sustained, save one.
Thereupon the report as modified by the sustained excep-
tions was confirmed by interlocutory decree.   Neither party
appealed from the decree confirming the modified report.

We state the significant subsidiary facts found by the master. Wrentham is a Connecticut corporation engaged in business as a manufacturers' representative and mill agent in the sale of plumbing and heating supplies, electrical appliances and similar items to industrial wholesalers in New England and the State of New York. It operates through a group of eight salesmen or district representatives who are in direct contact with its customers. As part of its procedure it keeps records of its customers, their discount entitlement, and credit standing. One of the duties of the salesmen was to keep up to date certain buying manuals prepared by Wrentham and given to the buyers in the various firms it dealt with.

In April, 1956, Cann, then twenty-three years old, and without experience in the particular business, entered Wrentham's employ at its home office in Connecticut at a salary of $60 a week. He underwent a course of training and early in 1957 became a district representative in eastern Massachusetts (which he shared with other representatives) and part of New Hampshire. Later, Vermont and the "Tri-Cities" area[1] in eastern New York were added. He called on the customers whose names were given to him and, like other district representatives, promoted good will, solicited new accounts, and assigned discounts. Cann's compensation was based upon a pay incentive plan.

On July 15, 1958, Wrentham and Cann executed a written contract of employment in Connecticut. Among its provisions were the following: Wrentham agreed to employ Cann; Cann's salary was to be fixed by agreement; all written data of Wrentham used by Cann in connection with his employment was to remain its property and to be returned to it upon demand; either party could terminate the contract upon thirty days' notice; Cann would not directly or indirectly or with anyone else for a period of five years after termination solicit customers of Wrentham or the account of any principal or supplier of Wrentham or repre-

---

[1] An area comprised of the cities of Albany, Troy, and Schenectady.

sent any principal represented by Wrentham "provided they were customers, principals, suppliers or accounts . . . represented or serviced by" Wrentham at any time during Cann's employment by Wrentham; Cann would not during the agreement or at any time, communicate the secrets of Wrentham's business or the names of customers, principals, suppliers or other parties dealt with by Wrentham; Cann would devote his full time and effort to Wrentham's business so long as he was in its employ. Upon the execution of the contract, Cann was to receive fifteen shares of class B common stock in Wrentham as a bonus. On each anniversary date he was to receive fifteen additional shares. The class B common stock had a par value of $10 a share. If Cann remained continuously in Wrentham's employ under the terms of the contract through July 15, 1963, Cann would have the option to convert this stock to a like number of class A stock in Wrentham.

Cann's weekly earnings rose from $60 to $170 in 1960; the yearly volume of business produced by him rose from $200,000 in 1957 to $624,000 in 1960.

Differences between Cann and the management developed in 1959 which led eventually in April, 1961, to an agreement to sever the relationship. Specifically on December 15, 1959, Cann had protested to one Finkel, the founder and general manager of Wrentham, that the restrictive covenant was too onerous and that he would be better off to quit then and suffer the restraints of the agreement rather than wait until he was older. Finkel in reply stated "that he would never stop anyone from making a living and cited instances of former employees under a similar contract presently working in the same industry without let . . . ." Cann remained in Wrentham's employ until April 6, 1961. Shortly before leaving, Cann took with him a list of accounts, both present and prospective, which was the property of Wrentham.

Since April 10, 1961, Cann has called on persons, some of whom he called on while in the employ of Wrentham and whose names were furnished to him by Wrentham, in east-

ern Massachusetts, and occasionally in Vermont and New Hampshire. He is selling for principals and suppliers who were not principals and suppliers of Wrentham.

The general findings of the master, unaffected by the sustained exceptions, and additional subsidiary findings, so far as relevant, are: Cann's duties with Wrentham were important but not confidential; Wrentham's system of merchandising was not confidentially imparted to Cann; the discussion of December 15, 1959, did not result in a binding waiver by Wrentham of the restrictive covenant of the contract of employment (the master particularly found that there was ''a feeling on the part of Cann that Finkel would not elect to enforce this provision'') ; the list taken by Cann, although confidential in the sense that Wrentham would not furnish it to a competitor, was a compilation that could be made by anyone familiar with the business, or from general knowledge, or from trade directories.

We dispose of two matters before proceeding. Although the contract was executed in Connecticut, with a Connecticut corporation, the law of this Commonwealth will be applied to the case for the reasons stated in *Commercial Credit Corp.* v. *Stan Cross Buick, Inc.* 343 Mass. 622, 625. Cann's contention that the covenant is invalid for want of mutuality has long been resolved to the contrary. *Sherman* v. *Pfefferkorn,* 241 Mass. 468, 473.

The modified master's report, confirmed by interlocutory decree from which no appeal has been taken, as here, is conclusive of the facts between the parties. *New England Overall Co. Inc.* v. *Woltmann,* 343 Mass. 69, 80–81. The report contains facts sufficient to support a final decree. *Rioux* v. *Cronin,* 222 Mass. 131, 133. See *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 224, and case cited; *Minot* v. *Minot,* 319 Mass. 253, 257–259. With the case in that posture it is our duty, as it was the duty of the judge, to see that a proper final decree is entered on the facts found. *Fred C. McClean Heating Supplies, Inc.* v. *Westfield Trade High Sch. Bldg. Comm. of Westfield, ante,* 267, 271.

The final decree, from which only Cann appealed, in substance by paragraphs, (1) enjoined Cann for a period of three years from April 6, 1961, from soliciting or communicating with any of Wrentham's customers, principals or suppliers, or representing any principal, who was a customer, principal or supplier of Wrentham during Cann's employment by Wrentham; (2) enjoined Cann from communicating, at any time, any information relating to the secrets of Wrentham's business or the name of any customer, principal, supplier or other party dealt with by Wrentham; (3) ordered Cann to return data described in the specific terms of the contract whether used by him as an employee or otherwise; (4) ordered Cann to return to Wrentham the list of customers of Wrentham or copies thereof; (5) ordered Cann's counterclaim dismissed; and (6) assessed costs.

The considerations governing cases of this type were stated in *Edgecomb* v. *Edmonston*, 257 Mass. 12, 18, and summarily restated recently in *Novelty Bias Binding Co.* v. *Shevrin*, 342 Mass. 714, 716, with cases cited. They need not be repeated. We apply them here and make such modifications of the decree as equitable principles dictate. The first paragraph of the decree goes beyond the terms of the covenant by inserting the words ''or communicating with'' after the word ''soliciting.'' The added words should be omitted. The injunction in that paragraph is too broad in terms of space. It should be limited to the area of his employment, to wit, the area of Massachusetts east of Worcester County (excluding, however, Bristol County and Cape Cod); Vermont; and the cities of Albany, Troy, and Schenectady in New York. *Brannen* v. *Bouley*, 272 Mass. 67, 70–71. *Whiting Milk Co.* v. *O'Connell*, 277 Mass. 570, 573–574. The injunction will not extend to New Hampshire because the master's finding that Cann's area of employment included ''part of New Hampshire'' is too indefinite an area to be included. *Tobin* v. *Cody*, 343 Mass. 716, 724. In terms of time, the injunction runs for three years although the provision in the covenant is for five years.

Wrentham, despite the fact that it has not appealed, asks us to make the injunction effective for three years from the date of rescript. We are not disposed to do so. The decree will provide, however, that the injunction is to be effective forthwith and run through April 6, 1964. The second paragraph is to be eliminated from the decree. There is no finding of secret information. In terms it is too sweeping. See *Abramson* v. *Blackman*, 340 Mass. 714, 715–716. The third paragraph likewise is to be eliminated since it has no basis in the facts found. The fourth paragraph, relating to the list taken by Cann when his employment was about to end, is to stand.

The fifth paragraph of the decree, dismissing Cann's counterclaim, requires brief discussion. The order of reference to the master was limited to the issue of enforceability of the covenant. The report quite properly and necessarily dealt with the factual situation attending Cann's separation from Wrentham. The findings preclude any right in Cann under the terms of his contract to convert his class B common stock into class A common stock as alleged in his counterclaim. The passing reference by Cann in his brief to his claim for money due is not sufficient to require us to consider it. *Phillips* v. *Phillips*, 336 Mass. 561, 562. *Muldoon* v. *West End Chevrolet, Inc.* 338 Mass. 91, 98. Further, his own motion for a final decree did not mention the counterclaim. It is not open to him now to raise the issue. The dismissal of the counterclaim in the light of the master's report was right.

The decree is to be modified in accordance with the foregoing and, as so modified, it is affirmed.

*So ordered.*