Murphy, J.
This case presents the question of whether an automobile insurer must reimburse an insured for “inherent diminished value" caused by a collision under insurance policy language mandated by the Commonwealth’s Division of Insurance in the Standard Massachusetts Automobile Policy of Insurance [“the Policy”]. In making the instant Motion, the defendant, Commerce Insurance Company [“Commerce”] urges this court to follow the approach set out in Roth v. Amica Mutual Ins. Co., Civil Action No. 98-3551 (Norfolk Super. Ct.) (Patrick F. Brady, J.) (1999), and decline such an interpretation.
For the reasons set forth herein, the court respectfully declines to adopt the rationale of Mr. Justice Brady, or perhaps more appropriately, chooses to extend that rationale, such that the Defendant’s motion for summary judgment must be and hereby is therefore DENIED.

BACKGROUND

The plaintiff, Elena Given [hereinafter “Given”], purchased an automobile insurance policy from Commerce for coverage of her 2000 Toyota Avalon from March 8, 2000 to March 8, 2001. On September 8, 2000, while driving the insured vehicle, Given was involved in an accident and her insured vehicle sustained $5,287.00 in physical damage. At the time of the accident, Given’s vehicle had approximately 5,300 miles and a fair market value of $25,195.00. After the accident, Commerce paid to repair the physical damage. However, in addition to the $5,287.00 in physical damage which Commerce paid, Given alleges that the vehicle suffered “inherent diminished value” in the amount of $1,414.70. Inherent diminished value, according to Given, derives from the “common sense principle that the fair market value of a vehicle that has been *557 in an accident is less than the fair market value of an otherwise identical vehicle that has never been in an accident.” Plaintiffs Memorandum of Law, p. 1. It is Commerce’s liability, vel non, under the policy for this type of lost value that the parties dispute in this litigation.
Part 7 of the Policy issued to Given by Commerce states, in relevant part:
... we will pay for any direct and accidental damage to your auto caused by a collision. It does not matter who is at fault . . . We will pay for each loss up to the actual cash value of the auto or any of its parts at the time of the collision. If the repair of a damaged part will impair the operational safety of the auto we will replace the part.
Part 11 of the Policy (General Provisions and Exclusions) states, in relevant part,
.. . [i]n any event, we will never pay more than what it would cost to repair or replace the damaged property.
[Emphasis added.]
The parties do not dispute that the insured “auto” was involved in a “collision” as those material terms are defined by the Policy. The terms “damage” and “damaged property” are not defined in the Policy. Furthermore, the Policy is devoid of any reference to “inherent diminished value.”

DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id.
“Summary judgment is a device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.” Cassesso, 390 Mass. at 422 (citations omitted). The function of summary judgment is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required.” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Supp.2d 143, 146-47 (D.Mass. 1998), citing McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Where a contract is unambiguous, “its interpretation is a question of law that is appropriate for a judge to decide on summary judgment.” Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002).
Both parties concede that the appellate courts of this Commonwealth have not yet considered the issue of inherent diminished value and, consequently, no appellate precedent governs the outcome of this case.[2] The issue was considered by Mr. Justice Patrick F. Brady of this Court in 1999, holding that the same standard form automobile insurance policy did not provide coverage for inherent diminished value. Roth, supra. The parties represented to the court during the hearing of this motion that review of the Roth decision is currently pending before the Appeals Court.
Generally, where the language of a contract is ambiguous, the court construes the language against the drafter. Merrimack Valley Nat’l Bank v. Baird, 372 Mass. 721, 724(1977). However, when no ambiguity exists, the language itself governs the rights and obligations of the parties. See Federal Fin. Co. v. Savage, 431 Mass 814, 817 (2000). In this case, Given is not entitled to have all ambiguous language of the insurance policy construed against Commerce for two reasons. First, there may be no such construction because, as the Division of Insurance drafted the language of the entire Policy, Commerce cannot be fairly characterized as the drafter of the contract. More importantly, the Court does not view the language which is in the Policy as “ambiguous” with respect to the issue at bar.
There is no dispute among the parties that, under the terms of the Policy, Commerce must repair or replace an insured vehicle in the event of a collision. As Mr. Justice Brady correctly noted, the policy contains no express provision for inherent diminished value. However, extending the logic of Mr. Justice Brady’s holding, it is critical to note that the Policy also contains no term or condition dictating that the decision to repair or replace the vehicle is at the election of the insurer, here Commerce. The Policy states only that Commerce “will never pay more than what it would cost to repair or replace the damaged property.” Nothing in this language grants the insurer (Commerce) or the insured (Given) the right to elect either option. The mere use of the disjunctive [i.e. repair or replace] cannot be fairly read to grant Commerce the right to elect either repair or replacement. The Policy is in fact silent as to what factors, if any, dictate which option applies under a given set of circumstances, and whose election it is to exercise the option.
Thus, in the view of this Court, the outcome of this case turns not on an interpretation or construction of the “repair or replace” language, but rather on judicial reflection upon the utter absence of language governing the issue of which party, insurer or insured, may elect the alternative of repair or replacement. It is well established that “[j]ustice, common sense and the probable intention of the parties are guides to construction of a written instrument.” Shane v. Winter Hill Fed. Sav. & Loan Assoc., 397 Mass. 479, 482 (1986). Courts should construe contractual language “to produce an equitable agreement between the parties.” Charles E. Burt, Inc. v. Seven Grand Corp., 340 Mass. 124, 127 (1959).
*558 Under Mr. Justice Brady’s interpretation of the Policy, it is patent that, if the cost to repair the vehicle exceeds its fair market value, then the insurer need only reimburse the insured for the fair market value of the vehicle immediately prior to the accident (generally, the so-called “Blue Book” value).. . ." This Court concurs that this interpretation is correct, but not dispositive of the issue. This analysis envisions the conventional scenario where the insured vehicle has little market value and significant damage. The high cost of repairing such a vehicle relative to its market value renders a repair clearly non-feasible. In these cases, however, it is often the case, if not almost always the case, that the insured owner of a vehicle with little market value is faced with the prospect of receiving a sum which will fall far short of restoring the insured to her pre-collision condition. This election works almost always in the economic favor of the insurer and to the detriment of the insured — especially, to be noted, an insured who has taken trouble to maintain her vehicle in superb operating condition, perhaps through significant expenditures in her own schedule or maintenance and repair. “Replacement” in these circumstances is a somewhat euphemistic expression for an arrangement working decidedly to the benefit of the insurance company.
The application of the repair or replace policy language to late model, newer, vehicles, such as the 2000 Toyota Avalon in this case, with a high fair market value requires a different analysis. In such a case, were Commerce’s position on the issue to be adopted, identical damage on a more expensive car induces the insurance company to pay only to repair the physical damage, leaving the insured in this matter, as with all similarly-situated insureds, the burden of absorbing the negative differential between the fair market value of her Avalon before and after the accident. In this case, prior to her accident Given owned a vehicle worth $25,195.00. Following the accident, although assumedly repaired to equalize its pre-accident physical condition, the vehicle will be, in a phrase, “damaged goods,” and in all likelihood worth some considerable sum less than its market value prior to the accident.
It is hoary, and axiomatic, contract law that agreements between parties, to be enforceable, must be supported by a “mutuality of obligation.” See Samuel Williston, A Treatise on the Law of Contracts §1:17 (4th ed. 1990), and Arthur Corbin, Corbin on Contracts §152 (1960). The concept of mutuality of obligation is most often used to verify the existence of a contract. See, e.g., Wrentham Co. v. Cann, 345 Mass. 737 (1948). However, the notion of “mutuality” may also bear on an assessment of damages. Barber Asphalt Paving Co. v. Staples, 246 Mass. 40, 45 (1923). “Mutuality” means that both parties will encompass an identical exchange of benefit and detriment on both sides of the contract. In the case at bar, since that exchange works to protect the insurer from paying more than the actual loss incurred on a relatively insubstantially valued car, it follows that the principle of “mutuality” — in the absence of any language in the Policy allocating the election of the benefit accruing from “repair” or “replacement” — dictates that the insurer must assume the actual loss to the insured for her car’s diminished fair market value. To afford the insurer the economic benefit at both ends of the valuation spectrum imparts an obvious non-mutuality of obligation into the Policy unsupported by its terms and conditions or any other mutually manifested intent of the parties.
In short, where the Policy is silent on the matter, it is simply unfair to cost the consumer and reward the insurer at both ends of the deal.
Further, in cases such as the one before the court, the insured should be able to elect the method by which the insurance company fulfills its obligation to pay for damages. As we have seen in the context of this case, it is the owner of the high value car who risks receiving compensation for less than full value of the loss if the insurance company is allowed to choose between options. In Roth, the insurance company was able to choose to repair or replace a vehicle because giving the choice to the vehicle owner exposed the company to the risk that it would have to make payments in excess of the actual loss. Therefore, Roth stands for the principle that the party bearing the risk of loss may protect itself by choosing between specified damages remedies absent express provisions to the contrary. Applying these principles to the case at bar, summary judgment must enter as a matter of law on Commerce’s liability for the so-called “inherent diminished value” of Given’s car after the accident, whatever that may be and however the same may be provable in a court of law.
There thus remains on the record of this case a genuine issue of material fact as to Given’s damages. This Court holds only that, to the extent Given shall be able to prove that her vehicle suffered “inherent diminished value” in the accident and to quantify same, Commerce is obligated by the terms of the policy to reimburse her for such damages.

ORDER

It is therefore ORDERED that the Defendant’s motion for summary judgment be DENIED.
It is further ORDERED that summary judgment enter in favor of the Plaintiff with respect to the issue of Defendant’s liability for such “inherent diminished value” as she may prove at trial.

 The respective parties rely, to some degree, on cases from other jurisdictions, where, essentially, rules of construction of contracts are argued. This court concurs with Justice Brady that such cases are inapposite because the Commonwealth’s Division of Insurance has mandated that all Massachusetts insurers use the “Standard Policy.” The court, therefore, declines to rely on these cases except to note a lack of consensus among the various state courts on this precise issue — to wit: whether “inherent diminished value” is recoverable by an insured.